## COMMONWEALTH *vs.* JAMES A. SMITH.

Suffolk.    March 31, 1896. — June 15, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Being present where Gaming Implements are found — Complaint — Argumentativeness — Joinder of Defendants — Intent — Sufficiency of Evidence — Constitutional Law — Effect of Mode of obtaining Evidence on Admissibility.*

In St. 1895, c. 419, § 9, the expression "every person found . . . so present" in a place which has been complained of as a common gaming-house where materials of any form of gaming have been found shall be punished, the word "so" is not to be so construed as to make it criminal to be in the same place with gaming implements if the place has been merely complained of as a common gaming-house, but such place must have been used unlawfully as a common gaming-house in fact.

A complaint under St. 1895, c. 419, § 9, alleged in substance that the complainant entered the room complained of and there found the defendant present at the time gaming implements were found by the complainant in the room, and that the complainant seized the implements and arrested the defendant. The complaint then proceeded, " And so the said complainant . . . doth say that the said room, in manner and form aforesaid, was unlawfully used as and for a common gaming-house." *Held*, that the words " And so" did not limit the following allegation to the legal conclusion from the preceding averment, but had the effect of alleging as a distinct substantive fact that the room was used as and for a common gaming-house.

Two or more defendants may be joined in one complaint for the offence of being present where gaming implements are found, under St. 1895, c. 419, § 9.

A complaint under St. 1895, c. 419, § 9, for being present where gaming implements are found, need not allege the defendant's knowledge of the presence of the implements or the character of the place where they are found.

At the trial of a complaint for being present at a place where gaming implements were found, under St. 1895, c. 419, § 9, there was evidence that by virtue of a warrant police officers searched the premises and found a blackboard on which were written in six different columns the names of race horses entered in six different races, and blank tickets for making memoranda of bets in a compartment for the sale of such memoranda. The defendant was present when the gaming implements, which were in plain view of any person in the room, were found, and when searched at the station-house was found to have on his person a ticket containing a memorandum of a bet on a horse race. *Held*, that the evidence warranted a conviction.

Sections 2, 3, and 4 of the St. 1895, c. 419, entitled " An Act relative to gaming," are constitutional.

At the trial of a complaint for being present at a place where gaming implements were found, under St. 1895, c. 419, § 9, a ticket containing a memorandum of a bet on a horse race, which was found on the defendant when searched at the station-house, is not rendered inadmissible by the mode in which it was obtained.

Objections to evidence are not open at the argument in this court on appeal, where
the case is submitted to the Superior Court on an agreed statement of facts, in
which the right to make such objections is not reserved.

COMPLAINT, under St. 1895, c. 419, for being present where
gaming implements were found. The complaint was as follows:

" To the justices of the Municipal Court of the city of Boston,
holden at said city of Boston for the transaction of criminal
business within the county of Suffolk, Charles H. Denton, of the
city of Boston, in the county of Suffolk, police officer, in behalf
of the Commonwealth of Massachusetts, on oath complains that
Henry Chase, on the fifteenth day of November, in the year of
our Lord one thousand eight hundred and ninety-five, on oath
informed the said justices that he suspected, and had probable
cause to suspect, that the front room in the second story of the
building situated and numbered nineteen in Province Street, in
said city of Boston, and within the judicial district of said court,
which said room was occupied by some person whose name was
to the informant unknown, was unlawfully used as and for a com-
mon gaming-house, for the purpose of gaming for money and
other property, and that divers persons, whose names were un-
known to the informant, resorted to the same for said purpose,
and prayed for a warrant to enter into said room and then and
there to arrest the keepers thereof and all persons then and
there in any way assisting in keeping the same, whether as jani-
tor, doorkeeper, watchman, or otherwise, and all persons then
and there found participating in any form of gaming, and all
persons then and there present, whether so participating or not,
if any lottery, policy, or pool tickets, slips, checks, manifold
books or sheets, memoranda of any bet, or other implements,
apparatus, or materials of any form of gaming were then and
there found in room, and to take into their custody all the imple-
ments, apparatus, and materials of gaming as aforesaid, and all
the personal property, furniture, and fixtures then and there
found. And thereupon the said court issued a warrant in due
form of law, under the seal of said court, commanding the sheriff
of said county of Suffolk, his deputies and the constables and
police officers of said city of Boston, and each of them, forth-
with with necessary and proper assistants to enter, in the day-
time or in the night-time, into said room, and then and there to

arrest the keepers thereof, and all persons then and there in any way assisting in keeping the same, whether as janitor, door-keeper, watchman, or otherwise, and all persons who were then and there found participating in any form of gaming, and all persons then and there present, whether so participating or not, if any lottery, policy, or pool tickets, slips, checks, manifold books and sheets, memoranda of any bet, or other implements, apparatus, and materials of any form of gaming were then and there found in said room, and to take into their custody all the implements, apparatus, and materials of gaming as aforesaid, and all the personal property, furniture, and fixtures then and there found, and to keep said persons, implements, apparatus, and materials, personal property, furniture, and fixtures, so that they might be forthcoming before said court, to be dealt with according to law; and that afterwards, to wit, on the fifteenth day of November, in the year aforesaid, by virtue of said warrant, and in obedience to the commands and requirements therein contained, the said Denton, being then and there a police officer of said city, and being then and there duly authorized to serve said warrant, with necessary and proper assistants, did enter into the said room, and then and there found James A. Smith, John S. Vogler, and Martin G. Dwyer, all of said Boston, present in said room at the time implements, apparatus, and materials of gaming were then and there by said Denton found in said room; and that the said Denton did then and there seize the said implements, apparatus, and materials of gaming, and did then and there arrest and take into his custody the said Smith, Vogler, and Dwyer so found present at the time implements, apparatus, and materials of gaming were then and there found as aforesaid, so that they might be forthcoming before said court, to be dealt with according to law.

" And so the said Denton, upon his oath aforesaid, doth say that the said room, in manner and form aforesaid, was unlawfully used as and for a common gaming-house, for the purpose of gaming for money and other property, and that divers persons resorted to the same for that purpose, and that the said Smith, Vogler, and Dwyer were then and there, and in manner and form aforesaid, severally present in said room at the time implements, apparatus, and materials of gaming were found in said

room as aforesaid, against the peace of said Commonwealth and the form of the statute in such case made and provided."

At the trial in the Superior Court, before *Richardson*, J., the defendant seasonably moved to quash the complaint for the following reasons: 1. that the defendant and those indicted with him were improperly joined; 2. that no offence was substantially set forth; 3. that the complaint was bad for argumentativeness; 4. that there was no distinct averment that the alleged room where the defendant was "found present" was a common gaming-house; 5. that there was no allegation that the defendant knew that the alleged room was unlawfully used for gaming, and that it was resorted to for gaming; 6. that there is no allegation that the defendant knew of the presence or existence in the alleged room of any implements, apparatus, and materials of gaming; 7. that there was no allegation that the defendant was knowingly, wilfully, intentionally, or unlawfully present in said room; 8. that it did not appear that the defendant was arrested by any legal process or order of the Superior Court, in that the warrant is not a part of the complaint; 9. that the statute on which the complaint is based is unconstitutional in declaring that any of the acts of persons and the presence of anything that might be used for unlawful gaming, or possession of anything by a person shall be *prima facie* evidence of a crime; 10. that the complaint is bad for surplusage; 11. that it is uncertain and insufficient in form and substance. The motion was overruled, and the defendant excepted.

The case was submitted to the Superior Court, and, after a conviction, to this court, on appeal, upon agreed facts, in substance as follows.

By virtue of a search-warrant granted under the provisions of St. 1895, c. 419, §.9, a search was made of the premises described in the complaint, and a blackboard was found on which were written, in six different columns, the names of race horses entered in six different races, and one hundred and twenty blank tickets for the making of memoranda of bets found in a compartment designed for the sale of such memoranda. The defendant was present when the above described implements, which were in plain view of any person in the room, were found, and when searched at the station-house a ticket containing a memorandum of a bet on a horse race was found on his person.

The defendant requested the judge to rule, 1. that on all the evidence the defendant should be acquitted; 2. that the mere presence of the implements of gaming in the alleged room, or possession of any gaming implement by the defendant, is not *prima facie* evidence of any unlawful game; 3. that the government must prove that the defendant was present where gaming implements were found, and that the implements were plainly in view, but that this is not sufficient to warrant the jury in drawing the inference that defendant was there unlawfully; 4. that the seizure of gaming implements from the person of the defendant is unlawful, and such evidence cannot be used against him.

The judge declined so to rule, the jury returned a verdict of guilty; and the defendant alleged exceptions.

*P. J. Casey & E. F. Collins,* for the defendant.

*M. J. Sughrue,* First Assistant District Attorney, for the Commonwealth.

HOLMES, J.   The offence of being present where gaming implements are found, created by St. 1895, c. 419, § 9, is created by the words "every person found . . . so present shall be punished." "So" refers back to the words "all persons present, . . . if any . . . materials of any form of gaming are found in said place." "Said place" by reference means a place which has been complained of under oath as a common gaming-house. But the words last quoted are used in that part of the section which authorizes an arrest on the complaint. When we come to the words constituting the offence, and first above quoted, it is plain that we must not take the word "so" literally, with the result of making it criminal to be in the same place with gaming implements if the place merely has been complained of as a common gaming-house. The place must be used unlawfully as a common gaming-house in fact. The word "so" is an abbreviation, and not so accurate an abbreviation as might be wished in a criminal statute, since it seems to have misled the pleader; but we are of opinion that the meaning is clear. Therefore it is material to allege that the place was "unlawfully used as and for a common gaming-house."

The allegation in the complaint before us is, "And so the said Denton . . . doth say that the said room, in manner and

form aforesaid, was unlawfully used as and for a common gaming-house," etc. It is argued for the defendant that the words " and so " import that the allegation following is a legal consequence of facts previously alleged; and that although there may be no objection to the form of expression as argumentative if the earlier allegations justify it, (*Commonwealth* v. *Desmarteau*, 16 Gray, 1, 16,) if they do not justify it the complaint must be quashed. *Commonwealth* v. *Whitney*, 5 Gray, 85, 86. The previous allegations here, after those which superfluously state the preliminary complaint and the warrant, are, in substance, that the present complainant, Denton, entered the room complained of and there found the defendant present at the time gaming implements were found by Denton in the room ; and that Denton seized the implements and arrested the defendant. All this might be true if the room was a chapel, if the defendant had been attending divine service, and if a thief had hidden the implements under a cushion in a remote corner of the place. It is not enough to warrant a conviction; it does not even amount to *prima facie* evidence under §§ 3, 4. The whole argument, it will be seen, turns on the effect of the words " And so." But the court are of opinion that the words as here used do not have the effect of limiting the following allegation to the legal conclusion from what precedes. They think that it sufficiently appears that the complainant intends to allege as a distinct substantive fact that the room was used as and for a common gaming-house.

The objection that the defendant and those indicted with him cannot be joined in one complaint, although plausible, seems to us unsound in view of the precedents. As was said of a different offence, the act is more analogous to the maintaining of a public nuisance than to those which necessarily are the separate acts of single persons. *Commonwealth* v. *Sampson*, 97 Mass. 407, 409. *Commonwealth* v. *Weatherhead*, 110 Mass. 175. See *Commonwealth* v. *Warren*, 161 Mass. 281.

It is unnecessary under the statute to allege the defendant's knowledge of the presence of the implements or the character of the place. The statute means that people enter such places at their peril. It goes no further than other statutes which have been enforced by this court. When according to common experience a certain fact generally is accompanied by knowledge

of the further elements necessary to complete what it is the final object of the law to prevent, or even short of that, when it is very desirable that people should find out whether the further elements are there, actual knowledge being a matter difficult to prove, the law may stop at the preliminary fact, and in the pursuit of its policy may make the preliminary fact enough to constitute a crime. It may say that, as people generally do know when they are selling intoxicating liquors, they must discover at their peril whether what they sell will intoxicate. *Commonwealth* v. *Hallett*, 103 Mass. 452. See *Commonwealth* v. *Farren*, 9 Allen, 489; *Commonwealth* v. *Boynton*, 2 Allen, 160. It may say that, if a man will have connection with a woman to whom he is not married, he must take the chance of her turning out to be married to some one else. *Commonwealth* v. *Elwell*, 2 Met. 190. See *Commonwealth* v. *Murphy*, 165 Mass. 66. In like manner it may say that people are not likely to resort to a common gaming-house without knowing it, and that they must take the risk of knowing the character of the place to which they resort, if the implements of gaming are actually present.

The evidence warranted a conviction. St. 1895, c. 419, §§ 2, 3, 4. These sections are constitutional. *Holmes* v. *Hunt*, 122 Mass. 505, 516, 517. *Crandell* v. *White*, 164 Mass. 54, 60. Apart from them the evidence was competent, and leaves no reasonable doubt as to the character of the place. See *Commonwealth* v. *Clancy*, 154 Mass. 128; *Commonwealth* v. *Healey*, 157 Mass. 455. The mode in which the ticket was obtained did not make it inadmissible, even if the right of objecting to it had been reserved in the agreed facts, which is not the case. *Commonwealth* v. *Ryan*, 157 Mass. 403. *Commonwealth* v. *Tibbetts*, 157 Mass. 519. *Commonwealth* v. *Hurley*, 158 Mass. 159. *Commonwealth* v. *Brelsford*, 161 Mass. 61. We believe we have dealt with all the questions before us. Some others were argued, which are not open.

*Exceptions overruled.** 

---

* A similar decision was made on the same day in Suffolk, in the case of COMMONWEALTH *vs.* YEE MOY & others.

COMPLAINT, under St. 1895, c. 419, for being present where gaming implements were found. The averments of the complaint were substantially identical with those of the complaint in *Commonwealth* v. *Smith, ante,* 370. A motion to quash was filed in the lower court and in the Superior Court

on appeal, assigning the same objections as those raised to the complaint in *Commonwealth* v. *Smith.* The Superior Court overruled the motion, and the defendants excepted.

The case was submitted to the Superior Court upon agreed facts, in substance as follows.

By virtue of a search-warrant a police officer went, on January 25, 1896, to a room situated on premises on Harrison Avenue, in Boston, and there found several people, including the defendants, and a " fan-tan lay-out," which consisted of gaming implements, two packs of playing cards, a large number of porcelain buttons, and a large number of colored circular porcelain disks such as are usually used for counting in gaming. No game was going on at the time. The defendants requested the judge to rule, (1) that on all the evidence all the defendants in each case should be acquitted; (2) that the statutes authorizing the search, and wherein the statutes make *prima facie* evidence the presence of gaming implements in the building a crime, and the presence of the defendants in the room when the same were found, are unconstitutional.

*Richardson*, J. declined so to rule, and instructed the jury that on the evidence they would be warranted in finding the defendants guilty.

The jury returned a verdict of guilty; and the defendants alleged exceptions.

*P. J. Casey*, for the defendants.

*M. J. Sughrue*, First Assistant District Attorney, for the Commonwealth.

HOLMES, J.   This case must follow the decision in *Commonwealth* v. *Smith, ante*, 370.            *Exceptions overruled.*