COMMONWEALTH *vs.* JOHN J. REGAN & another.

Middlesex.    March 20, 1902. — June 18, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Intoxicating Liquors*, Innholder's license. *Evidence*, Burden of proof.

Under Pub. Sts. c. 100, § 9, cl. 2, (R. L. c. 100, § 17, cl. 2,) permitting a licensed innholder to supply intoxicating liquors on Sundays "to guests who have resorted to his house for food or lodging", an innholder lawfully may sell such liquors to a person resorting there on Sunday, who expects to make and makes a substantial purchase of food and eats it, whether or not his undisclosed reason for wanting the food is that he may get intoxicating liquor with it.

The rule that the burden of proof is on an innholder seeking to justify sales of intoxicating liquor on Sunday to show that the persons to whom the sales were made were guests who resorted to the house for food or lodging, applies where the sales are relied on as evidence of intent on a complaint for illegal keeping as well as to prosecutions for illegal sales.

On a complaint against two brothers for unlawfully keeping for sale intoxicating liquors the evidence showed sales on Sunday alleged to be in violation of their innholder's license. It appeared that the license was in the names of both defendants, but both of them testified without contradiction that the second defendant worked for wages and had no interest in the business and that his name was inserted with his brother's in the license merely in order that the business might go on in case the first defendant died. It appeared that the second defendant was present during the whole of the day when the sales took place. Both defendants were found guilty. *Held*, that there was some evidence that the second defendant was guilty. The jury might have disbelieved the testimony of the defendants and have inferred a joint interest from the license, coupled with whatever part the second defendant took in the management of the business of the inn.

COMPLAINT, received and sworn to in the Police Court of Lowell, July 16, 1901, against John J. Regan and Michael P. Regan for unlawfully keeping for sale intoxicating liquors.

On appeal to the Superior Court the case was tried before *Lawton*, J., whose ruling is stated by the court. Both defendants were found guilty; and alleged exceptions.

*N. D. Pratt*, for the defendants.

*G. A. Sanderson*, District Attorney, for the Commonwealth.

HOLMES, C. J. This is a complaint for exposing and keeping for sale intoxicating liquors with intent unlawfully to sell the same. The defendants justified under licenses as innholders and also licenses of the first and fourth class to sell liquors. At the

trial it appeared that the defendants sold intoxicating liquors on Sunday, in the dining rooms of their hotel, to persons who first had ordered and had been served with food for which a separate charge was made and which was paid for. The main question of the case is raised by the fourth and fifth requests for instructions, and by the charge upon that point by the judge. The instructions requested were in substance that if a person seemingly in good faith orders food for which he has to pay and expects to pay, the licensed innholder lawfully may serve him intoxicating liquor with it, if that also is ordered. The presiding judge on the other hand instructed the jury that if a man " ordered a turkey dinner," still he would not be a guest resorting to the hotel for food within the meaning of the statute if his object in going there was to get the liquor and his ordering the food a mere means of obtaining it. The distinction it will be seen is very important. A majority of the court is of opinion that the exceptions must be sustained.

The business of an innholder is not put under a ban by the law. It must be assumed to be respectable even when involving the sale of liquors by license. We cannot suppose that the Legislature meant to make its license illusory and the innholder's liability to fine a pure matter of chance, as they would be if the innholder is responsible whenever a guest wants the food he pays for only as a means of obtaining his drink. The statute imposes a penalty and it should be construed in a reasonable, practical way rather than so as to make the business impossible or a lottery.

The language of the section is, " if the licensee is also licensed as an innholder, he may supply such liquor to guests who have resorted to his house for food or lodging." Pub. Sts. c. 100, § 9, cl. 2. R. L. c. 100, § 17, cl. 2. According to the common usage of English speech, the word " guest " signifies a relation determined by outward circumstances, not by inward intent. No doubt the instruction was based upon the words " who have resorted to his house for food." But those words are satisfied if to purchase food is the actual purpose of the one who resorts to his house. They do not require the purpose mentioned to be the final motive. A man resorts to a house for food who goes there intending to buy food and eat it, and none the less that

the motive of his intent is an ulterior desire. Were it otherwise it might be hard to state why a distinction should be taken between the case where the motive of the intent is desire for drink and where it is desire for conversation with a friend.

The proposition may be illustrated further by the alternative case of guests who have resorted to the house for lodging. It hardly would be maintained that a person did not resort to the inn for that purpose because the object of his lodging there was fornication or to concoct a scheme for housebreaking. Conversely, no one would say that if a man gave another poison he did not administer it for poisoning because his only motive for wishing to poison was some desire which was virtuous apart from the means employed.

The decisions about the purchase of food as a mere subterfuge turn not on the ultimate motive but on the external, visible facts. When the transaction in its visible form is, or may be found to be, in substance, merely a sale of liquor, it is not helped by adding a cracker and a bit of cheese, or by calling it a sale of the latter and a gift of the drink. *Commonwealth* v. *Hagan*, 140 Mass. 289. In *Commonwealth* v. *Moore*, 145 Mass. 244, the papers show that there was no question before the court as to the effect of intending to buy food. We assume that a jury might be justified in finding the transaction to be merely a sale of liquor under some circumstances even if the price of the drink was slightly increased by the food. But if the person resorting to the inn expects to make and makes a substantial purchase of food, and eats it, it is not enough to destroy the protection of the license that the undisclosed reason for his wanting the food is that he may enjoy the accompanying pleasure of a bottle of wine.

Only a few words need be said concerning the other requests. It is unnecessary to consider whether there was any evidence of a purchase of liquor with a merely illusory purchase of food, as we have explained the phrase. The evidence is not reported with a view to that question.

In this State it seems to be settled that the defendants could not escape liability merely on the ground that they believed that customers were guests within the statute. *Commonwealth* v. *Barnes*, 138 Mass. 511. Compare *Taylor* v. *Humphries*, 17

C. B. (N. S.) 539, 549. *Peache* v. *Colman*, L. R. 1 C. P. 324. 2 Bish. Crim. Law, (8th ed.) § 970. The severity of such a rule has been criticised with inadequate understanding of the grounds for it. They will be found stated, as we understand them, in *Commonwealth* v. *Smith*, 166 Mass. 370, 375, 376. Whether policy requires such strictness must depend on the particular case. Of course all liability is measured by the defendant's knowledge. The question accurately stated is what knowledge is sufficient to throw the peril of action upon the person who does a certain act.

In a complaint for illegal sales, the burden of proof would have been upon the defendant to show that the persons to whom sales were made were guests who had resorted to the house for food or lodging. *Commonwealth* v. *Towle*, 138 Mass. 490. See Pub. Sts. c. 214, § 12. The same rule applies when the sale is relied on as evidence of intent in a complaint for keeping. *Commonwealth* v. *Dean*, 110 Mass. 357. *Commonwealth* v. *Leo*, 110 Mass. 414. *Commonwealth* v. *Rafferty*, 133 Mass. 574. *Commonwealth* v. *Barnes*, 138 Mass. 511.

There was some evidence that Michael P. Regan was guilty. It is true that the defendants both testified that he worked for wages and had no interest in the business, that his name was inserted with his brother's in the license merely that the business might go on in case the latter died, and that the brother was present in the hotel during the whole of the day in question. But the jury might have disbelieved their testimony and have inferred a joint interest from the license, coupled with whatever part Michael took in the management of the business of the inn.

*Exceptions sustained.*