## COMMONWEALTH *vs.* ERVING H. MIXER.

Essex.    November 1, 1910. — November 30, 1910.

Present : KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Intoxicating Liquors.    Intent.    Carrier*, Of goods.

To a complaint under St. 1906, c. 421, charging the defendant with transporting
for hire intoxicating liquor into a city where licenses of the first five classes for
the sale of intoxicating liquors were not granted, without first having been
granted a permit so to do, it is no defense that the defendant did not know and
had no reason to surmise that there was intoxicating liquor in the package
which he is shown to have transported.

Collection by RUGG, J., of cases dealing with criminal offenses created by statute
in which innocence of intent is no defense.

*It seems*, that a common carrier of goods, in order to protect himself against com-
mitting the crime created by St. 1906, c. 421, has a right under the proper
circumstances to inspect packages offered for transportation for the purpose of
ascertaining whether they contain intoxicating liquors and may refuse to take
any package which he is not allowed to inspect in a reasonable manner for this
purpose.

RUGG, J.    This complaint under St. 1906, c. 421, charges the
defendant with illegally transporting intoxicating liquor into
the city of Lynn, where no licenses of the first five classes for
the sale of intoxicating liquor and no permits to transport such
liquor into the city had been granted.    The defendant, a driver
in the employ of a common carrier, had upon his load for trans-
portation in Lynn a sugar barrel, not marked by the seller or
consignor as required by R. L. c. 100, § 49, for packages contain-
ing intoxicating liquor.    There was nothing about the appearance
of the barrel to cause suspicion as to its contents, and the defend-
ant was ignorant of the fact that it contained intoxicating liquor.
In the Superior Court the presiding judge * refused to instruct
the jury that unless the defendant knew that the barrel con-
tained intoxicating liquor or from its appearance and all the
circumstances ought reasonably to have been put on inquiry as
to its contents, he should be acquitted.    The question presented
is whether this refusal was error.    Broadly stated the inquiry
is whether a common carrier or his servant can be convicted of
the crime of illegally transporting intoxicating liquor under the

* *Bell*, J.

statute, when he does not know and has no reason to surmise that there is intoxicating liquor in a package delivered for transportation by a seller or consignor who has violated the law by failing to mark such package plainly and legibly with the kind and amount of liquor it contains.

In the prosecution of crimes under the common law apart from statute, ordinarily it is necessary to allege and prove a guilty intent, and as a general principle a crime is not committed if the mind of the person doing the act is innocent. An evil intention and an unlawful action must concur in order to constitute a crime. But there are many instances in recent times where the Legislature in the exercise of the police power has prohibited under penalty the performance of a specific act. The doing of the inhibited act constitutes the crime and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute. There are many illustrations of such exercise of legislative power, as for instance, the selling of milk below a designated standard, *Commonwealth* v. *Wheeler*, 205 Mass. 384, *Commonwealth* v. *Warren*, 160 Mass. 533; the driving of an unregistered automobile, *Feeley* v. *Melrose*, 205 Mass. 329, 334; being present where gaming implements are found, *Commonwealth* v. *Smith*, 166 Mass. 370; obstructing a highway more than five minutes even through unlawful interference by trespassers, *Commonwealth* v. *New York Central & Hudson River Railroad*, 202 Mass. 394; bigamy and adultery by marriage with one honestly, upon reasonable ground but mistakenly, supposed to be single, *Commonwealth* v. *Mash*, 7 Met. 472, *Commonwealth* v. *Thompson*, 11 Allen, 23, *Commonwealth* v. *Hayden*, 163 Mass. 453, 457; killing for sale an animal under a designated age, *Commonwealth* v. *Raymond*, 97 Mass. 567; being present where implements for smoking opium are found, *Commonwealth* v. *Kane*, 173 Mass. 477; admitting a minor to a billiard hall, *Commonwealth* v. *Emmons*, 98 Mass. 6; selling adulterated milk, *Commonwealth* v.

*Farren,* 9 Allen, 489; storing and selling naphtha, *Commonwealth* v. *Packard,* 185 Mass. 64, *Commonwealth* v. *Wentworth,* 118 Mass. 441; sale of imitation butter inadvertently not wrapped as directed by the employer and required by law, *Commonwealth* v. *Gray,* 150 Mass. 327.   See also *Commonwealth* v. *Lavery,* 188 Mass. 13 ; *Commonwealth* v. *Murphy,* 165 Mass. 66 ; *Commonwealth* v. *Connelly,* 163 Mass. 539 ; *Commonwealth* v. *Shea,* 150 Mass. 314 ; *Commonwealth* v. *Julius,* 143. Mass. 132 ; *Commonwealth* v. *Dyer,* 128 Mass. 70.   This principle has been very frequently applied to statutes respecting intoxicating liquor.   In *Commonwealth* v. *Boynton,* 2 Allen, 160, it was held that one could be convicted of selling intoxicating liquor even though he had no reason to suppose that it was intoxicating. To the same effect see *Commonwealth* v. *Goodman,* 97 Mass. 117; *Commonwealth* v. *Hallett,* 103 Mass. 452; *Commonwealth* v. *Uhrig,* 138 Mass. 492 ; *Commonwealth* v. *Savery,* 145 Mass. 212 ; *Commonwealth* v. *Daly,* 148 Mass. 428; *Commonwealth* v. *O'Kean,* 152 Mass. 584.   The sale by a licensed liquor dealer to a minor, though made in good faith and without reason to suspect that the purchaser was below age, *Commonwealth* v. *Stevens,* 153 Mass. 421, *Commonwealth* v. *Finnegan,* 124 Mass. 324 ; or to one honestly but erroneously supposed to be a guest on the Lord's day, *Commonwealth* v. *Regan,* 182 Mass. 22, *Commonwealth* v. *Joslin,* 158 Mass. 482, 497, *Commonwealth* v. *Barnes,* 138 Mass. 511, have all been held crimes under statutes of this nature.   This ·rule prevails generally though not universally throughout the United States.   See cases collected in 12 Ann. Cas. 470, 6 L. R. A. (N. S.) 477 and 25 L. R. A. (N. S.) 669.   It was assumed in *Commonwealth* v. *Riley,* 196 Mass. 60, that the crime created by R. L. c. 100, § 50, of delivery by a regular expressman of intoxicating liquor without entering it in a book belonged to this class.

It becomes necessary to examine the terms and history of the statute upon which the present complaint is founded, and the antecedent enactments of the Legislature touching the general subject, to determine whether it falls in the same class.   The local option license law now prevailing was first enacted by St. 1875, c. 99.   It contained no provision respecting the transportation of liquors.   By St. 1878, c. 207, the transportation of

intoxicating liquors into municipalities where licenses were not granted, with intent to sell or having reasonable cause to believe that they were intended to be sold in violation of law, was forbidden, and whoever wilfully violated any provision of the law was subject to punishment. In a respect immaterial to the present inquiry, this statute was amended by St. 1879, c. 282. By the consolidation of pre-existing enactments in Pub. Sts. c. 100, § 18, the word " wilfully " was omitted, and has not since appeared in any statute touching the transportation of intoxicating liquor.

St. 1897, c. 271, required plain and legible marking of the packages with the name of the consignee and the keeping of minute records by the common carrier respecting all packages containing intoxicating liquor. These provisions were reenacted in R. L. c. 100, §§ 49–53, both inclusive.

By St. 1906, c. 421, the Legislature made still more stringent and detailed provisions respecting the transportation of liquor into or through no license municipalities. It was enacted by § 1 of this act, under which this complaint is framed, that " No person or corporation, except a railroad or street railway corporation, shall, for hire or reward, transport spirituous or intoxicating . liquors into or in a city or town in which licenses of the first five classes for the sale of intoxicating liquors are not granted, without first being granted a permit so to do . . ." ; and by § 4 that " Any person violating the provisions of this act shall be punished by a fine . . . or by imprisonment . . . or by both . . ., and any violation of the laws relative to the transportation of intoxicating liquors, by a person holding a permit . . ., shall render such permit void." Sections 2 and 3 of this act make provision for the granting of permits for the transportation of liquors in so called no license cities and towns.

It is obvious from these successive enactments that the Legislature has been struggling to make it more and more difficult to transport liquor secretly into cities and towns where licenses are not granted. It was said by Hammond, J., in *Commonwealth* v. *Intoxicating Liquors*, 172 Mass. 311, at p. 315, while discussing the purpose of St. 1897, c. 271: " The act was manifestly intended to meet some difficulties which had been encountered by the government in the prosecution of common carriers for

illegal keeping of intoxicating liquors, and to make it more difficult for the guilty to escape detection when setting up the fraudulent defence that the liquors found in the possession of the carrier were for delivery by him as such to some person. It is only one of the many statutes which indicate that the policy of the .Commonwealth is to require that the traffic in liquors in this State shall be open, so that every step shall be exposed to the scrutiny of the authorities, and that the violation of the law may be the more easily detected."

The desire of legislative bodies to restrict intemperance by regulation of the transportation and sale of intoxicating liquor is almost universal. It was said in *Scott* v. *Donald,* 165 U. S. 58, 91 : " The evils attending the vice of intemperance in the use of spirituous liquors are so great that a natural reluctance is felt in appearing to interfere, even on constitutional grounds, with any law whose avowed purpose is to restrict or prevent the mischief."

No question of constitutionality arises in the present case, for the statute under which this complaint is made is not open to objection in that regard. *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 575.

It is earnestly urged in the present case, however, that the defendant's employer, being a common carrier and as such bound to accept all packages offered to him for transportation, and as a general rule having no right to compel a shipper to disclose its contents to him when there is no reason to suspect that the package contains an illegal or dangerous object (*Crouch* v. *London & Northwestern Railway,* 14 C. B. 255, *Parrot* v. *Wells, Fargo & Co.* 15 Wall. 524, the nitro-glycerine case), the statute ought not to be interpreted in such a way as to render him criminally liable if he was in fact innocent of any intent to transgress the law ; and it is further pointed out in support of this argument that courts of other jurisdictions have held carriers liable for refusing to transport liquors contrary to an illegal local ordinance, *Southern Express Co* v. *Rose Co.* 124 Ga. 581, and where the carrier had reason to believe that it would be illegally sold after delivery. *Crescent Liquor Co.* v. *Platt,* 148 Fed. Rep. 894. See cases collected in 6 Cyc. 372 B.

Notwithstanding these considerations, we are not inclined to

relax the rule so plainly laid down in many cases, nor to interfere with the policy of the Legislature respecting the regulation of transportation and sale of intoxicating liquors. While the rule may seem harsh at first sight in some of its applications, this raises not a question of judicial construction but of legislative policy with which the courts cannot interfere so long as no constitutional guaranty is infringed. Although the severity of the rule " has been criticised with inadequate understanding of the grounds for it" ( *Commonwealth* v. *Regan*, 182 Mass. 22, 25), they are pointed out with clearness by Holmes, J., in *Commonwealth* v. *Smith*, 166 Mass. 370, at 375, in this language : " When according to common experience a certain fact generally is accompanied by knowledge of the further elements necessary to complete what it is the final object of the law to prevent, or even short of that, when it is very desirable that people should find out whether the further elements are there, actual knowledge being a matter difficult to prove, the law may stop at the preliminary fact, and in the pursuit of its policy may make the preliminary fact enough to constitute a crime."

The Legislature may say with respect to transportation of liquors that ordinarily common carriers do not transport them without either knowing or having reasonable ground to suspect their nature, or that usually packages containing them give some evidence of their contents to those reasonably alert to detect it, or that directly or indirectly some information generally is conveyed to the carrier as to their character. See also *Keller* v. *United States*, 213 U. S. 138, 150. The language of the statute under consideration is plain and unequivocal. It contains no words, such as " wilfully " or " knowingly," indicating a vicious intent as a part of the crime created. There is nothing about it to suggest an exception for the benefit of one who without moral blame violates its terms. Its phraseology discloses a legislative determination that society can best be protected against the evil aimed at by a rigorous application of an inflexible rule. There is no distinction in principle between this and the many other statutes construed in the cases we have cited. It must be assumed that the Legislature in enacting this statute in its present form had in mind the construction placed upon similar statutes. The inference is irresistible that it intended

no different meaning or interpretation from that expressed in other laws of like character. Moreover railroads and street railways, common carriers which do not deliver merchandise to houses or places of business, are exempted from the operation of the statute although they are subject to the provisions of R. L. c. 100, § 49, as are all shippers of intoxicating liquor, whether by railroad, railway or other carrier. This circumstance tends to emphasize its application to those carriers who deliver goods in such a way as to make especially difficult of detection violations of the law. Evasion of laws of this kind is well known to be more likely to be practised when small quantities are involved. Taking into account the magnitude of the evils arising from the use of intoxicating liquors and the manifest struggle of the Legislature by successive enactments to regulate its transportation so that secrecy may be prevented, and so that those municipalities which have voted " no license " may be protected from furtive and slyly clandestine efforts to override the popular desire for freedom from its illicit traffic, an exemption ought not to be read into the statute contrary to what seems to be a deliberate legislative purpose based upon grounds of public policy. It follows from what has been said that the carrier has a right to use any reasonable efforts, by the establishment and publication of general rules, by specific inquiry, or in proper cases by the inspection of packages, or otherwise, to ascertain whether intoxicating liquors constitute any part of the goods offered for transportation, and to refuse to take any as to which this right is denied, in order to protect himself against committing the crime created by the statute. The nitro-glycerine case, *Parrot* v. *Wells, Fargo & Co.* 15 Wall. 524, involved only the civil liability to third persons at common law on the ground of negligence of a carrier, who had ignorantly and innocently received for transportation nitro-glycerine which exploded in transit. In the opinion, at page 536, from the general statement that the carrier has no right to require a knowledge of the contents of packages, instances of special legislation conferring such right are exempted. In *Crouch* v. *London & Northwestern Railway*, 14 C. B. 255, there was refusal to receive general merchandise offered by transportation merely because of declination by shipper to disclose the contents of the package, but without

placing the demand for such knowledge on the terms of St. 8 & 9 Vict. c. 20, § 105, which authorized the carrier to refuse to receive explosives. It is apparent from what is said by Jervis, C. J., at p. 291, that if the refusal to receive had been based upon the terms of this section a different result might have been reached. The general rule upon which the defendant relies to the effect that a carrier cannot insist ordinarily upon obtaining knowledge of the character of goods offered for transportation is subject to a well recognized exception where a statute expressly or impliedly confers that right. The statute with which we are dealing is of that class, and by its imposition of criminal responsibility for transporting the prohibited articles necessarily clothes the carrier with power to obtain such knowledge as may protect him, or to refuse to take the proffered goods. See *Bernard* v. *Adams Express Co.* 205 Mass. 254 ; *Connors* v. *Cunard Steamship Co.* 204 Mass. 310.

Apparently the Supreme Court of Vermont reached an opposite conclusion in *State* v. *Goss*, 59 Vt. 266. It is to be noted, however, that in *State* v. *Audette*, 81 Vt. 400, the same court has held that an erroneous though honest and reasonable belief in the previous death of an earlier consort of one of two parties to a marriage is a defense to a charge of adultery, thus adopting the rule laid down in *The Queen* v. *Tolson*, 23 Q. B. D. 168, rather than the contrary rule steadily followed in this Commonwealth since *Commonwealth* v. *Mash*, 7 Met. 472, 474, and *Commonwealth* v. *Thompson*, 11 Allen, 23, and generally adopted throughout this country.* *State* v. *Swett*, 87 Maine, 99, related to a different kind of crime occurring under distinguishable circumstances, and may not necessarily be inconsistent with the result here reached ; but, if it is, we are not disposed to follow it.

*Exceptions overruled.*

*J. W. Sullivan*, for the defendant.

*H. C. Attwill*, Assistant District Attorney, for the Commonwealth.

---

* *People* v. *Spoor*, 235 Ill. 230. *Parnell* v. *State*, 126 Ga. 103. *Cornett* v. *Commonwealth*, 134 Ky. 613. *Rice* v. *Commonwealth*, 31 Ky. Law Rep. 1354. *Jones* v. *State*, 67 Ala. 84. *State* v. *Armington*, 25 Minn. 29. *Russell* v. *State*, 66 Ark. 185. *Davis* v. *Commonwealth*, 76 Ky. 318. *State* v. *Zichfeld*, 23 Nev. 304. *State* v. *Goodenow*, 65 Maine, 30. *State* v. *Hughes*, 58 Iowa, 165. *Medrano* v. *State*, 32 Tex. Cr. Rep. 214.