UNITED STATES OF AMERICA *v.* SAMUEL D. HAUSMAN.

March 25, 1913.

1. *Criminal law—Evidence—Confessions—Inducement:* In support of a motion to dismiss indictment, it was deposed that the district attorney, having informed the defendant of suspicions of his having opium concealed in his possession, asked if there was any objection to an examination of his trunk, and that the defendant, replying in the negative, invited the attorney to his room, whereupon the attorney said he would "make it as light as possible," would "use his influence and make the offense as light as possible," and would "do all he could" for the defendant. *Held,* that such circumstances, if true, would not of themselves alone render an immediately subsequent confession of possession of opium, at once followed by its discovery, incompetent as the basis of an indictment: the defendant having already consented to open the trunk to examination of what its contents might disclose, a subsequent suggestion of favor or leniency, though precedent to the examination, is not such an inducement of hope of favor as to render involuntary and incompetent as evidence a confession made at, or before and near, the time of such examination.

2. *Indictment—Motion to dismiss—Affidavit:* In support of a motion to dismiss indictment on the ground of its being based on the admission of an incompetent confession in evidence before the grand jury, an affidavit which shows only the confession and not the fact of its having been presented to the grand jury nor the fact of its being the basis of the indictment, is insufficient, even though those facts be stated in the body of the motion itself; such facts should be verified by oath.

3. *Indictment—Motion to quash—Grounds supporting motion:* On motion to quash indictment, an objection based on a circumstance (res gesta) involved in the act charged but not apparent on the face of the indictment, is untenable.

4. *Indictment—Sufficiency—Allegations of place:* An indictment charging violation of the "opium" act (35 Stat. 614, Feb. 9, 1909) in the defendant's having received, bought, sold, and concealed smoking opium, "theretofore imported and brought into the United States from some foreign country to the grand jurors unknown," is sufficient against a motion to quash for want of allegation of the country whence the opium was brought.

5. *Constitutional law—Due process of law—Evidence; possession as prima facie evidence of crime:* The constitutional guaranty of due process of law is not infringed by the provision of said act, that possession of contraband opium "shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury."

*Indictment*: Motion to dismiss; Motion to quash; Demurrer; and Plea to jurisdiction.

Indictment under act of Congress of February 9, 1909 (35 Stat. 614).

*C. C. Bitting,* Assistant U. S. Attorney, for the United States.

*George A. Davis* and *E. A. C. Long* for defendant.

CLEMONS, J. The defendant moves to dismiss the indictment on the grounds, in substance (I) that it was "found upon evidence not competent or legal testimony against the accused, in that the evidence consisted principally of a confession and admissions made by him in the presence and hearing of the United States attorney and the collector of customs, which confession and admissions were induced and obtained by and through certain inducements held out and extended to the defendant by the United States attorney;" (II) that "the indictment was obtained by confessions and admissions of the defendant . . . not voluntary and made by reason of certain inducements and representations made to him by the United States attorney;" and (III) that "said indictment was not presented and found upon legal and competent testimony but upon testimony obtained by improper means, and said indictment for said reasons is invalid and should be dismissed."

In an affidavit in support of this motion, the defendant deposes to the following facts (in paraphrase): The United States attorney, on the afternoon of February 7, 1913, in the lobby of a Honolulu hotel, approached the de-

fendant and presented a card bearing the defendant's name and place of business in Seattle. Whereupon the attorney said he had reasons to believe defendant had opium concealed in his trunk and asked if he had any objections to his examining it. The defendant replied that there were no objections and invited the attorney to the defendant's room upstairs. Whereupon the attorney said "that he would make it as light as possible; that he would use his influence and make the offense as light as possible, and would do all he could for" the defendant. The defendant and the attorney, accompanied by the collector of customs, then went to this room, and after entering the defendant said, "it was a sad day for him, he had just received a letter from his wife congratulating him on his birthday, which letter he handed to the attorney, who asked to be allowed to take it home to read and [said] that he felt deeply touched about it and the defendant had his sympathy." After conversing with the collector he also said "he saw no reason in sending this man to jail, let him remain here under guard." The collector acquiesced and again in the same room the attorney told the defendant "he would make it light for him and do all he could for him." "Any confession or admission" which the defendant "may have then made was induced and brought about" by the aforesaid "conduct, representations, and inducements" of the attorney, and was "made of and concerning the opium which was found in the defendant's trunk by the attorney and the collector, and which the defendant after opening said trunk himself told them was inside said trunk, were not free and voluntary admissions and confessions of his doings in, about, of, and concerning said opium." The attorney did not tell the defendant, or in any way warn him, that any admission or confession then made would be used in evidence against him, either before the grand jury or upon his trial. And on the next day, the attorney called him from the United State's marshal's office into the attorney's office

and, by reason of the inducements and representations made to the defendant on the day before, the defendant made certain other statements and answered certain other questions propounded by the attorney, and all of said statements, admissions, and answers were made while laboring under the effect of the inducements and representations so made to him by the attorney in the hotel lobby and in his room in the hotel, and but for said inducements and representations he would not have answered any of said questions propounded at the attorney's office. And the defendant was not warned that any said answer would be used against him to obtain any indictment or upon his trial.

The motion concludes with a prayer that the proceedings before the grand jury "may be fully inquired into," and that the district attorney be "orally examined in this court as to said proceedings, and as to what witnesses were examined, and as to what evidence was given" before the grand jury.

[1] Fear was clearly not the inducement to any confession made by the defendant. We may, therefore, for sake of argument, assume the indictment to have been founded on "hope of favor," and consider only whether the facts stated constitute such an inducement of hope as to make the confession incompetent evidence of guilt. Now, the only statements of the district attorney upon which a hope could have been founded are: (1) "That he would make it as light as possible and that he would do all he could for" the defendant; the affidavit failing to explain the meaning of the word "it" in the phrase "make it as light as possible," though the inference that it means "punishment" is probably clear enough. (2) "That he would make it light" . . . "and do all he could for" the defendant. The first statement was made by the attorney *after* the defendant, in response to the attorney's having said he had reasons to believe opium was concealed in the

trunk and his having asked if defendant had any objections to its examination, had disclaimed any objections and invited the attorney to come to his room.   The attorney's offer, immediately subsequent, of "making it light," and "using his influence," and "doing all he could," was, therefore, if made, purely gratuitous; it could not, in the nature of things, be called an inducement.   The second statement, also, was made *after* the defendant had said he had no objections to an examination of the trunk, and had invited the attorney to his room, but perhaps (though the point is left unexplained) not before the defendant's actual opening of the trunk and disclosure of its contents.   It may be, that defendant's counsel would have it inferred, that the mere presence of these officers of the law induced a fear or a hope of favor such as to stamp any consequent confession as involuntary.   Any inference of that kind would be an application of the law of confessions more in accord with the "excesses of by-gone practice" than suited to the present common-sense view.   1 Wigmore, Evidence, chap. xxviii, at length; Id., sec. 865, 867; 2 Wharton, Criminal Evidence, 10th ed., sec. 705, par. 2, (a) and (e).   At all events, anything the district attorney may have said to raise defendant's hope of favor, was the sequel and not the inducement of his confession:   the defendant had already said in effect, in reply to the suggestion of there being opium in his trunk, "you may examine my trunk; come to my room and see whatever its contents may disclose."   Its contents disclosed the possession of opium, which mere possession is enough to justify an indictment.   And this disclosure was only the carrying out of what the defendant had himself already, and *voluntarily,* suggested.   Accordingly it is held that the defendant's affidavit does not make out a case of an incompetent confession.

[2] Though the motion is thus untenable even on the assumption, in defendant's favor, of a confession's having actually been in evidence before the grand jury, still it

should be noted that in any event the affidavit fails to show this fact,—which appears only in the list of grounds annexed to the motion. The ground that the grand jury based its finding "principally" upon evidence of a confession, is, therefore, left wholly unsupported by oath: an oversight which may possibly explain the special prayer of the motion for the court's aid in finding out just what evidence was adduced before the grand jury.

Under this view of the matter, the propriety of the motion's peculiar prayer for disclosure of the grand jury's proceedings need not concern us here; nor is the district attorney called upon to make any counter affidavit or other disclosure.

The object of the rule as to confessions is the arrival at truth, or at least the avoidance of untruth, quite as much as the protection of a particular class of persons, or the discouragement of questionable practices of public prosecutors and their allies in discovery of what the truth may be. See 1 Wigmore, Evidence, sec. 822, 823. And on the truth-object theory, there may be some room for argument that the affidavit does not make it sufficiently clear, whether the indictment might not have been justified by evidence (and whether such were not the only evidence before the grand jury) of "inculpatory facts discovered through an inadmissible confession." See 1 Wigmore, Evidence, secs. 859, 856-858; 2 Wharton, Criminal Evidence, 10th ed., secs. 677 a, 677.

By determining the motion on the merits of the alleged supporting facts, it is not intended to intimate any opinion, as to how far it may be permissible to inquire into the evidence upon which an indictment is founded.

Let the motion to dismiss, together with its special prayers, be denied.

There is next interposed by defendant a motion to quash the indictment, on grounds which are now disposed of below:

(I) That the statute involved ("Opium" act), 35 Stat. 614, is "unconstitutional and void," in that (a) the "act is indefinite," (b) "in violation of the Constitution" (without specifying how), (c) "usurps the functions of the legislature of the Territory of Hawaii by legislating upon subjects beyond the powers of Congress," and (d) "in connection therewith is an attempt to deprive citizens of their property and rights under the Constitution without due process of law and a violation of the right to life, liberty, and the pursuit of happiness guaranteed by the Constitution."

(II) That the act is "unconstitutional and void because in violation of Article V of the Amendments of the Constitution."

(III, IV) Practically the same as ground (I, c) above, adding, specially and by way of explanation, that "the Territorial legislature, under the police power, have the sole right and power under the Constitution of the United States and Organic Act of this Territory to legislate upon such a subject and to regulate the buying, receiving, selling, . . . etc. of opium after it is brought into the Territory of Hawaii."

The preceding grounds of objection, (I) to (IV) inclusive, are disposed of by the decision in the habeas corpus case arising out of the defendant's arrest herein. *In re Hausman*, ante p. 202.

(V) That the act applies only to States of the Union and not to Territories, and so is not applicable here in Hawaii.

The act is directed against the importation or bringing of opium "into the United States," and any assistance in its importation, as well as the receipt, concealment, etc. of "such opium . . . knowing the same to have been imported contrary to law," and provides that "possession of such opium shall be sufficient evidence to authorize conviction" unless explained.

[3] This ground of objection, as argued, would seem to assume that the opium referred to in the indictment was im-

ported or brought into some place other than a State of the Union, the defendant's counsel presumably referring to the Territory of Hawaii. The indictment does not on its face permit any such inference, but is entirely consistent with an unlawful importation into some State of the Union. The opium may, for instance, have been unlawfully imported into the State of California and then unlawfully "received, bought," etc., here in this Territory,—which receipt, purchase, etc., would be subject to this statute, whether the statute applied to original importation into States of the Union and Territories or strictly to importation into States of the Union alone. That is to say, the objection, if tenable, can properly be raised at trial upon an offer by the government of evidence of an importation into the Territory and not into a State of the Union.

It may be noted that under the statute's peculiar provision relating to possesion, the fact of such possession would alone justify a conviction, without regard to where the unlawful importation was made, whether into a State of the Union or into a Territory of the United States.

So far as concerns the general application of the statute to this Territory, apart from any construction of its language ("States," etc.), the court would have jurisdiction under Judicial Code, sec. 24, subdiv. "second."

(VI) That the "indictment is misleading and does not inform the defendant of the nature and cause of the accusation."

(VII) That "it is impossible under said indictment, for the defendant to plead to the same, because seven distinct and separate offenses are charged in the same count , . . and no particulars of time, place, or circumstances . . . are set out, and said defendant is not able . . . to make his defense to the same."

These two objections have been overruled in the cases of *United States v. Ah Foo,* 3 U. S. Dist. Ct. Haw. 487, 490; *United States v. Fong Hing,* ante, p. 69, on one phase

(ground VI above), and *United States v. Leau Hung,* 3 U. S. Dist. Ct. Haw. 552, on the other (ground VII above).

(VIII) That the provision of the act making possession of opium sufficient to authorize conviction, unless explained to the jury's satisfaction, is "unconstitutional and a violation of the fundamental principles of jurisprudence, and especially the presumption that every person . . . shall be presumed to be innocent until his guilt is established beyond a reasonable doubt by competent evidence;" being in contravention of Article XIV of the Amendments to the Constitution, as a deprival of life, liberty or property without due process of law.

[5] The highest authorities approve the principle that a law-making body has power to enact, even in criminal cases, that proof of certain facts shall be prima facie evidence of the main fact in question, if the fact proved has some fair relation to, or natural connection with, the main fact. *Meadowcroft v People,* 163 Ill. 56, 45 N. E. 303, 305, 54 Am. St. Rep. 447, 452-453, 35 L. R. A. 176. See Cooley, Constitutional Limitations, 7th ed., 526, note (2). It is common to apply this principle in support of statutes which make possession prima facie evidence of crimes involving the use of inhibited or contraband articles. 2 Wharton, Criminal Evidence, 10th ed., sec. 945; *Com. v. Smith,* 166 Mass. 370, 375-376, Holmes, J.; *Com. v. Yee Moy,* Id. 376, note.

(IX) That the said provision also violates Article IV of the said Amendments.

This was disposed of in the habeas corpus case, *In re Hausman, supra.*

(X) That the said provision is further "unconstitutional and invalid in that it makes the person guilty of crime irrespective of and in the absence of any criminal intent."

The discussion of ground (VIII) applies here.

(XI) Practically the same as ground (VII) above,— that "the indictment charges the defendant with seven dis-

tinct and separate offenses in connection with the receiving, buying, selling, concealing and facilitating the purchase, sale, receipt and concealment of smoking opium and opium prepared for smoking, alleging [an additional circumstance] that the same was imported and brought into the United States from some foreign country . . . unknown, and because said indictment does not allege . . . from which foreign country the said opium has been brought into the United States."

The principle noted in *United States v. Ah Foo,* 3 U. S. Dist. Ct. 487, disposes of the additional circumstance, i. e., place of importation, mentioned above.

[4] And that this objection is untenable may be made clear by an extreme illustration.—Such illustrations are often illuminating tests.—Suppose the defendant to have been in possession of opium of source unknown picked up on the high seas and carried to San Francisco, at which port it was "imported" or (an even broader word) "brought" into the United States. Such a case the allegations of this indictment would properly cover. Indeed, it is quite immaterial under the broad terms of the statute, where the inhibited drug may come from, provided it is imported or brought in: whatever its foreign source, it is contraband. In other words, the indictment charges an importation (or bringing in) from some unknown foreign country, and the fact that the particular foreign country cannot be described, does not make the importation any less a crime under the statute. It would seem superfluous to say that an immaterial circumstance does not require pleading.

(XII) That "it is not a crime under the act . . . to bring into the Territory of Hawaii from the United States opium . . . as charged in the indictment, and that possession is no evidence that the opium . . . was unlawfully imported or brought into the United States, and that therefore that portion of said act which provides that the possession of such opium shall be deemed sufficient to

authorize a conviction is unconstitutional and void."

The latter part of this ground is disposed of above. The first part is untenable, for the reason suggested under discussion of ground (V).

(XIII) That the indictment charges an offense with reference to opium "imported and brought into the United States from a foreign country, whereas in fact said opium which said defendant had in his possession or under his control was brought from the port of San Francisco . . . to the port of Honolulu."

This ground, involving a matter of fact not apparent on the record, has no place in a motion to quash. The objection might be raised at trial in a proper case.

(XIV) After repeating other grounds above set forth,—that (a) the act is "unconstitutional and void, because in violation of Articles V, VI, X and XIV of the said Amendments, and that (b) the indictment and proceedings thereunder are "illegal . . . because the act makes the possession of such opium . . . evidence against a defendant and authorizes a conviction even though such possession had been acquired innocently."

These grounds have already been disposed of, either above, or in the habeas corpus proceeding.

Let the motion to quash be denied.

The foregoing opinion disposes of the defendant's plea to the jurisdiction and of his demurrer, which are accordingly overruled.