**MARTINEZ v. PEOPLE OF PORTO RICO.**

No. 2457.

Circuit Court of Appeals, First Circuit.

Jan. 2, 1931.

Edelmiro Martinez Rivera, of San Juan, Porto Rico, for appellant.

William C. Rigby, of Washington, D. C. (James R. Beverley, Atty. Gen., of Porto Rico, Grant T. Trent and Edward A. Kreger, both of Washington, D. C., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

An information was filed against the appellant under a statute of Porto Rico, the English version of which is as follows:

"Section 1. Every person who adulterates or dilutes milk and every person who sells, offers or keeps for sale, or who transports or stores milk to be used for human consumption, and every person using milk adulterated or diluted for industrial purposes, when such milk is to be used in the preparation of food for human consumption, shall be guilty of misdemeanor." Laws Porto Rico 1925, p. 558, No. 77, § 1.

The information alleges that the defendant "did illegally, wilfully, maliciously and fraudulently have and offer for sale, as good and as unadulterated, cow milk adulterated with water and powdered milk."

The defendant was found guilty of the offense charged by the District Court, and the judgment was affirmed by the Supreme Court of Porto Rico. The defendant appealed to this court, and assigns as errors:

"1. The Supreme Court of Porto Rico erred in holding that 'An Act providing punishment for the adulteration of milk and for other purposes,' of the Legislature of Porto Rico (Session Laws of 1925, page 558), is constitutional in so far as it punishes every person who sells, offers or keeps for sale, or who transports or stores milk to be used for human consumption.

"2. The Supreme Court of Porto Rico erred in holding that the indictment filed in this case against the defendant, David Martinez, stated facts sufficient to constitute a violation of the 'act providing punishment for the adulteration of milk and for other purposes,' of the Legislature of Porto Rico (Session Laws of 1925, page 558)."

The grounds of the first error assigned are: (1) That the Organic Law of Porto Rico requires that no bill shall be passed by the Porto Rican Legislature containing more than one subject, which shall be clearly expressed in its title; (2) that by the terms of the act it does not undertake to punish one for the sale or offering for sale of adulterated milk, but for the sale or offering for sale of milk, which would be in violation of the Organic Law, in that it would deprive a dealer in pure milk of the equal protection of the law.

The act, it is true, prohibits, not only the adulteration of milk, but, as we hold, other offenses, including the sale, offering for sale, keeping, transporting, and storing of adulterated milk. The title of the act is: "An act providing punishment for the adulteration of milk and for other purposes." The obvious aim of the act was to promote the public health. The phrase in the title, "for other purposes," served notice that there are other matters contained in the act than the mere adulteration of milk, but, so long as they were germane and served the main purpose of the act, we think the Organic Law was complied with. 25 R. C. L. 844, 852; Bank v. State, 124 Ga. 15, 52 S. E. 74, 2 L. R. A. (N. S.) 1007.

As the Supreme Court said in Posados v. Warner, Barnes & Co., 279 U. S. 340, 344, 49 S. Ct. 333, 334, 73 L. Ed. 729: "The purpose [referring to a similar provision of the Organic Law of the Philippines as to title of acts passed by the Philipino legislature] is to prevent the inclusion of incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth and fraud in legislation. When bills conform to such

requirements, their titles serve conveniently to apprise legislators and the public of the subjects under consideration. Courts strictly enforce such provisions in cases that fall within the reasons on which they rest. But, as freedom required or convenient for the effective exertion of the legislative power ought not unnecessarily or lightly to be interfered with, the courts disregard mere verbal inaccuracies, resolve doubts in favor of validity, and hold that, in order to warrant the setting aside of enactments for failure to comply with the rule, the violation must be substantial and plain."

We do not see how those voting for the act could in any way have been misled by the title. 25 R. C. L. 866. The first point, therefore, is without merit.

■ The second point raised under the first assignment is equally without merit. The appellant's contention that the prohibition of the statute as to the sale and offering for sale of milk does not cover the sale or offering for sale of adulterated milk, but prohibits the sale of pure milk, and to this extent is in violation of the Organic Law, is based on the English version of the statute, supra.

To hold that it was the intent of the Legislature to prohibit the sale of pure milk raises a doubt at once as to the correctness of such a construction. That such was not the intent is made certain, we think, by the literal translation of the Spanish text, the act having been introduced in the Legislature in the Spanish language, which is as follows:

"Every person who adulterates or dilutes milk and every person who *it* sells, offers or keeps for sale, or who *it* transports or stores with the purpose of dedicating *it* to human consumption, and every person who uses adulterated or diluted milk for industrial purposes, when it is destined for the preparation of foods for human consumption, will be guilty of a misdemeanor." (Italics supplied.)

From this it is clear that it was the intent of the Legislature to prohibit, not only the adulteration of milk, but the sale, offering for sale, keeping for sale, transporting, or storing of adulterated or diluted milk when intended for human consumption. When a statute is susceptible of two constructions, the one which renders it constitutional should be adopted.

It would be futile, too, to claim that it was the intent of the Legislature to make the mere keeping of adulterated milk an offense, but, when stored, it must be with the purpose of dedicating it to human consumption. This phrase must be construed as qualifying each of the substantive acts enumerated.

■ The second error assigned, however, must be sustained, not because it was not alleged that the respondent knowingly sold or offered for sale adulterated milk, as was urged below, since the statute does not acknowledge an element of the offense, and it is not one of those offenses where it is necessary to aver knowledge (Com. v. Farren, 9 Allen, 489; Com. v. Hallett, 103 Mass. 452; Com. v. Smith, 166 Mass. 370, 376, 44 N. E. 503; State v. Smith, 10 R. I. 258; Wharton's Crim. Law [9th Ed.] § 88), but because it makes the intent with which it was sold or offered for sale a necessary element of the offense.

According to both the Spanish and the English version, it is only when adulterated milk is offered for sale to be used for human consumption that it becomes an offense. The statute was clearly enacted in the interest of public health, and the danger it was directed against was the adulteration of milk intended for consumption by the public.

It is not sufficient to allege it was illegally and willfully kept and offered for sale. It might be both, if it was milk that had been stolen, or if kept in a manner in violation of some local by-law, and still not be a violation of this statute, nor be intended for human consumption. To comply with the statute and to convey to the respondent sufficient information to enable him to meet the charge, the averments of the indictment or information must include the intent with which adulterated or diluted milk is offered for sale, or, in the language of the act, it must be averred to have been offered for sale, "with the purpose of dedicating it to human consumption."

It appears from the briefs filed by the respondent below that the Supreme Court of Porto Rico has construed this statute both ways. People v. Santiago, reported in 38 P. R. and in People v. Justino, but recently decided. In the first case we are advised that it ruled that the intent must be averred; in the latter case that such an allegation was not necessary. No English translation of the court's decision in either case, however, has been furnished us. This court will follow the insular courts in the construction of their local statutes, especially where the statute involves property rights, unless clearly wrong (Diaz v. Gonzalez, 261 U. S. 102, 43 S. Ct. 286, 67 L. Ed. 550; Fernandez & Bros. v. Ayllon y Ojeda, 266 U. S. 144, 45 S. Ct. 52,

69 L. Ed. 209); but where, as in this case, the statute involves personal rights and personal liberty, if it appears clear that the insular court has erred in its construction, this court may not adopt the construction of the local courts, but, guided by the ordinary rules for the construction of statutes, and in view of the purpose of the act and the meaning ordinarily given to the language employed, will itself seek to ascertain the intent of the legislative body.

The failure to allege in the information that the adulterated milk offered for sale by the respondent was with the purpose of dedicating it to human consumption, or, according to the English version, to be used for human consumption, is fatal.

The judgment of the Supreme Court of Porto Rico is reversed, and the case is remanded to that court, with directions to order the information dismissed.