COMMONWEALTH *vs*. JEFFREY V. GRANT.

Suffolk. November 8, 1983. — April 12, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & O'CONNOR, JJ.

*Rape. Practice, Criminal,* Instructions to jury, Deliberation of jury. *Jury and Jurors.*

At the trial of an indictment charging aggravated rape, the evidence with respect to the existence of the essential elements of the crime charged was sufficient to warrant denial of the defendant's motion for a required finding of not guilty. [648-649]

A specific intent that intercourse be without consent is not an essential element of the crime of rape. [649-650]

At the trial of a rape case, the judge did not err in refusing to give the jury certain instructions requested by the defendant, where the requested instructions were based on the defendant's erroneous contention that a specific intent to have intercourse without consent is an essential element of the crime of rape. [650-651]

Although the judge in a rape case, after conducting a postverdict examination of four jurors, made no specific finding as to whether a juror whose daughter had been a rape victim some ten years earlier was biased, it was apparent from the judge's questioning of the juror about bias and his conclusion that there was no ground for impeaching the verdict that the judge had found the juror to be impartial. [651-653]

INDICTMENT found and returned in the Superior Court Department on November 16, 1981.

The case was tried before *McGuire,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Jane Larmon White* for the defendant.

*Judy G. Zeprun,* Assistant District Attorney (*Kevin F. Driscoll,* Assistant District Attorney, with her) for the Commonwealth.

O'CONNOR, J. A jury found the defendant guilty of aggravated rape (G. L. c. 265, § 22). The defendant moved for a postverdict inquiry of the jurors and for a new trial. The trial judge allowed the motion for a postverdict inquiry and, after interviewing four jurors, denied the motion for a new trial. The defendant was sentenced to serve no more than seven years and no less than four years at the Massachusetts Correctional Institution at Walpole.

The defendant appeals from his conviction and from the denial of his motion for a new trial. He argues (1) that the judge erred in denying his motion for a required finding of not guilty because the evidence was insufficient to warrant a finding that the defendant specifically intended to have nonconsensual sexual intercourse; (2) that the judge erred in failing to instruct the jury that an essential element of rape is that the defendant specifically intended to have nonconsensual intercourse; and (3) that the judge erred in denying his motion for a new trial because one of the jurors was not impartial.[1] We granted the defendant's application for direct appellate review. We affirm the conviction and the denial of the defendant's motion for a new trial.

The following evidence was introduced at trial. On September 14, 1981, at approximately 4:30 P.M., the defendant and a male companion approached the victim on a beach in Winthrop where the victim had stopped to take a break from her job of selling vacuum cleaners. One of the men offered her an opportunity to earn $100 to $200 dollars a day for photographic modelling for perfume and cologne advertisements. She agreed to meet them at the beach later, about 6 P.M.

---

[1] The parties also briefed the issue whether the judge erred by denying the defendant's motion to dismiss the indictments pursuant to Mass. R. Crim. P. 36 (b) (1), 378 Mass. 909 (1979), where the return day was November 30, 1981, and the trial day was December 8, 1982, and where two continuances were requested by the defendant and the final continuance was ordered by the judge due to a backlog in the session. Counsel for the defendant conceded at oral argument, however, that our recent decisions in *Barry* v. *Commonwealth,* 390 Mass. 285 (1983), and *Commonwealth* v. *Farris,* 390 Mass. 300 (1983), resolve that issue. We need not discuss the issue any further than to say that there was no error in denying the defendant's motion to dismiss the indictments pursuant to Mass. R. Crim. P. 36 (b) (1).

At 6 P.M., the victim returned to the beach and waited in her car for the defendant and his companion. Shortly thereafter they arrived at the beach in the defendant's car and parked behind the victim's car. The two men got out of their car, walked over to the passenger side of the victim's car, and proceeded to get into the front seat. She told them to get out. The defendant got out and got back into his car, but the defendant's companion refused to leave. The defendant's companion then instructed the victim to follow the defendant's car. She did so because she thought they were going to a photography studio.

After a time the two cars were separated, but they met again approximately fifteen minutes later at Constitution Park. At Constitution Park the defendant parked his car, transferred some photography equipment from his car to the victim's car, and joined his companion and the victim in the front seat of the victim's car. They drove off again, this time with the defendant driving. While in the car the two men frequently told the victim that this was "part of the course" or "par for the course" or "part of the cost." The victim did not know what that phrase meant, but she thought it referred to the photography business and to the possibility of her becoming a model. At that time the victim was afraid.

They eventually arrived at a vacant apartment building. The two men got out of the car, walked over to the building, and began to break down its door. The victim testified that she had an opportunity to drive away while the men were breaking down the door, but that she did not do so because she was too "scared." All three entered the building and went down to its basement. There, the victim was directed to a couch and told to kneel on all fours. The defendant's companion removed the victim's underpants. She then was ordered to engage in oral intercourse with the defendant. The victim testified that the defendant put one hand on the back of her head and pushed her mouth onto his penis. She tried to push him back. While this was occurring, the defendant's companion entered her anally. The victim screamed. The defendant's companion told her to shut up and began slapping her on the face and ears. The

defendant's companion then left the basement. At this point the victim tried to leave, but the defendant grabbed her and pushed her back onto the couch. The defendant told the victim that he would speak to his companion. The defendant left for a moment and returned with his companion who began to hit the victim again about the nose and face. The victim's nose began to bleed. The defendant's companion then left the building.

The victim ran out of the building to the middle of the street and tried to get help from passing motorists. No one stopped to help her. Finally, she went back to her car. Before she could leave, however, the defendant walked over to her, took her keys, and said, "You're in no condition to drive." He then drove her back to the beach and then to Constitution Park where he asked her to have oral sex. She refused, and no sexual activity took place. The defendant got into his car and departed.

The victim drove herself to a gas station where she received help. She was taken by ambulance to the Chelsea Health Care Center of the Massachusetts General Hospital and was treated for a perforated eardrum, a bruise over her eye, a bruise on her right arm, and a cut in her right nostril.

The next day, the police apprehended the defendant, who admitted to having sexual intercourse with the victim, but denied raping her. He also told the police that he had met his companion for the first time the day of the incident and that his companion called himself "Robert McCarthy." The police have not apprehended the defendant's companion.

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty. That motion was denied. In reviewing a denial of a motion for a required finding of not guilty, we consider whether the evidence, in the light most favorable to the Commonwealth, "is sufficient to permit the jury to infer the existence of the essential elements of the crime charged; and, whether the evidence and the inferences permitted to be drawn therefrom are sufficient to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt." *Commonwealth* v. *Casale,* 381

Mass. 167, 168 (1980). See also *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). The jury could have found that the victim was initially put in fear by the refusal of the defendant's companion to get out of the victim's motor vehicle, that the victim continued to be afraid, that the victim was duped into going to an abandoned building where she would be vulnerable to attack, that inside the building, alone with the two men, she was ordered to kneel and to engage in oral intercourse, that she physically resisted and her resistance was met with physical force, that anal intercourse with one of the men and oral intercourse with the other occurred simultaneously, and that immediately afterwards she was physically beaten. A conclusion that the defendant compelled the victim to engage in sexual intercourse was warranted. See *Commonwealth* v. *Sherry,* 386 Mass. 682, 687-688 (1982).

The defendant does not appear to argue that the evidence was insufficient to permit a finding of nonconsensual intercourse. Rather, the defendant argues that no rational trier of fact could have found, beyond a reasonable doubt, that the defendant, personally, or as a joint venturer, had sexual intercourse with the intent that it be by force or threat of bodily injury and against the victim's will. The argument is predicated on the assertion that in addition to intercourse and lack of consent, another essential element of the crime of rape is a specific intent that the intercourse be without consent. However, that is not the law.

General Laws c. 265, § 22 (*a*), as appearing in St. 1980, c. 459, § 6, provides in material part: "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or is committed by a joint enterprise, or is committed during the commission or attempted commission of [certain felonies] . . . shall be punished by imprisonment in the state prison for life or for any term of years." General Laws c. 265, § 22 (*b*), provides in material part that: "Whoever has sexual intercourse or unnatural sexual intercourse with a person

and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished . . . ." The elements necessary for rape do not require that the defendant intend the intercourse be without consent. General Laws c. 265, § 22. No specific intent is required. "The essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury." *Commonwealth* v. *Sherry, supra* at 687. Since the evidence was sufficient to show intercourse without consent, the motion for a required finding of not guilty was properly denied.

In addition to asserting that the judge erroneously denied his motion for a required finding of not guilty, the defendant also contends that the judge's failure to instruct the jury in accordance with his requests was erroneous. The defendant requested the following instructions:

"The burden is on the Commonwealth to prove, beyond a reasonable doubt, that the defendant had a specific intent to compel [the victim] to submit to sexual intercourse by force. A mere desire to have sexual intercourse, without an intent to use force or threat, does not constitute the specific intent necessary to support a charge of rape.

"In evaluating the element of intent, you should consider whether or not [the victim] resisted in any way. In other words, her lack of consent must have been explicitly communicated to the defendant because he could only be guided by her overt acts and the manifestations of her feelings. (*O'Brien* v. *Cunard Steamship Co.*, 154 Mass. 272, 273 [1891]).

"If [the victim] did not express her lack of consent to the defendant, and he had a reasonable, good faith belief that she did consent to sexual intercourse, he would not be guilty of the crime of rape, see *Commonwealth* v. *Sherry, supra,* 386 Mass. at 697; *Commonwealth* v. *Larmey,* 14 Mass. App. Ct. 281, 285 (1982), because the element of specific intent to rape would be lacking."

Those requests for instructions, like the motion for a required finding of not guilty, were based on the contention that a specific

intent to have nonconsensual intercourse is an essential element
of rape, so that that intent must be proved by the Common-
wealth in every rape case (except those cases involving children
under the age of sixteen; see G. L. c. 265, §§ 22A and 23,
inserted by St. 1980, c. 459, § 11). We have rejected that
contention of the defendant in disposing of the required finding
issue. We are aware that we said in *Commonwealth* v. *Sherry,*
*supra* at 697, that "[w]hether a reasonable good faith mistake
of fact as to the fact of consent is a defense to the crime of
rape has never, to our knowledge, been decided in this Com-
monwealth." However, our statement in *Sherry* does not
suggest that in order to establish the crime of rape the Common-
wealth must prove in every case not only that the defendant
intended intercourse but also that he did not act pursuant to
an honest and reasonable belief that the victim consented. At
best, our statement in *Sherry* left open the question whether,
if nonconsensual intercourse is established, a defendant might
nevertheless be excused, where the issue is properly raised,
because of an honest and reasonable, although mistaken, belief
that the victim consented. Even if that defense were to be
recognized in this Commonwealth, which to date it has not
been, the issue would not be raised in the absence of evidence
from which the jury could find that, although the victim did
not consent, the defendant reasonably and in good faith be-
lieved otherwise. No such evidence was presented here. There
was no evidence in this case that would have warranted a
finding that the defendant reasonably and honestly believed
that the victim consented to intercourse. A judge is not required
to instruct a jury on a hypothesis that is unsupported by the
evidence. *Commonwealth* v. *Lee,* 383 Mass. 507, 514 (1981).
*Commonwealth* v. *Thurber,* 383 Mass. 328, 331 (1981).

The defendant's final contention is that his motion for a new
trial should have been allowed because one of the jurors was
biased. As a preliminary to requesting a new trial, the defendant
moved for a postverdict inquiry of jurors. That motion was
supported by an affidavit of defense counsel which said that
one of the jurors had telephoned defense counsel following
the verdict and had told him that another member of the jury had

said that a member of her family "had been the victim of crimes identical to those for which the defendant was on trial and that the facts of the former case were markedly similar to the facts of the case at bar."[2] The affidavit also said that the juror who telephoned had stated that during deliberations a juror had made statements about the geographical locations involved in this case and that the statements were not based on the evidence. The judge allowed the defendant's motion for a postverdict inquiry of the jurors and he conducted separate in camera interviews of four of them.

One of the four jurors disclosed to the judge that about ten years earlier her daughter had been a rape victim. The judge then referred to the empanelment procedure and to the fact that after telling the venire that the case about to be tried involved rape and kidnapping charges[3] he had asked if anyone was conscious of any bias or prejudice. The juror responded that at that time she did not think about the incident involving her daughter and that the incident did not cause her to be biased or prejudiced. She said that she "went by the rules and the law."[4]

Interviews of other jurors disclosed that any conversation between jurors about the earlier rape of a juror's daughter took place after the verdict on the rape indictment and the declaration of mistrial of the indictment charging kidnapping. The interviews did not disclose any pre-verdict juror conversations about the locations involved in the case. The judge determined that "no extraneous matter concerning the rape of [the juror's] daughter came before the jury at any time prior to the court's declaration of a mistrial. Thus, no ground exists for impeaching

---

[2] The trial which is the subject of this appeal was for kidnapping as well as for aggravated rape. The jury were unable to reach a verdict on the kidnapping charge and a mistrial was declared. Subsequently, the kidnapping charge was placed on file without a change of plea and with the defendant's consent. It is not an issue in this appeal.

[3] See note 2, *supra.*

[4] We note that the prospective jurors were not asked whether they, or a member of their immediate families, had ever been a victim of rape or other violent crime. It does not appear that the judge was requested to ask that question.

the jury's verdict of guilty of the aggravated rape charge." The judge denied the defendant's motion for a new trial.

The defendant does not challenge the judge's finding that no extraneous matter came before the jury prior to the jury's verdict. He argues, however, that the judge's conclusion that no reason existed to impeach the jury's verdict was error because a reason did exist, namely, that one of the jurors was biased or prejudiced and that her presence on the jury denied the defendant his right to a fair trial by twelve impartial jurors. The defendant argues that the judge never considered this ground as a reason to impeach the jury's verdict, as evidenced by the fact that the judge made no finding with respect to the impartiality of the juror.

It is apparent from the dialogue between the judge and the juror that the judge did consider whether the juror was biased. Although a juror's bias, strictly speaking, is not an "extraneous matter" as that term is ordinarily used, see *Commonwealth* v. *Fidler,* 377 Mass. 192 (1979), the judge's conclusion, after questioning the juror about bias, that there was no ground for impeaching the verdict, clearly implies his finding that the juror was not biased. The judge had a right to rely on the testimony of the juror in that regard. *Commonwealth* v. *Coleman,* 389 Mass. 667, 676 n.7 (1983). The judge did not err by denying the defendant's motions for a new trial.

*Judgment affirmed.*

*Order denying motion
  for a new trial affirmed.*