COMMONWEALTH *vs.* ALAN LEFKOWITZ
(and a companion case[1]).

Suffolk. June 6, 1985. — August 6, 1985.

Present: GREANEY, C.J., BROWN, & WARNER, JJ.

*Rape. Practice, Criminal,* New trial, Appeal, Instructions to jury. *Due Process of Law,* Criminal intent.

Defendants convicted of unaggravated rape were precluded from raising the contention, in proceedings on their respective motions for a new trial, that their constitutional right to confront the complaining witness had been violated by the trial judge's exclusion of evidence, offered to impeach her testimony by showing bias and unreliability, that she had recounted rape experiences on prior occasions, where the record and briefs which had been before the Supreme Judicial Court on the defendants' direct appeal, as well as the opinion of the court, showed that their contention had been made and rejected. [514-516]

The due process rights of defendants on trial for rape were not violated by the judge's declining to instruct the jury that "unless you find beyond doubt that the accused had actual knowledge of [the victim's] lack of consent, then you must find them not guilty." [516-520] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on January 8, 1981.

Following review by the Supreme Judicial Court reported sub nom. *Commonwealth* v. *Sherry,* 386 Mass. 682 (1982), motions for a new trial were heard by *Walter E. Steele,* J.

*Jeanne Baker* (*Gail S. Strassfeld* with her) for Alan Lefkowitz.

*Kenneth M. Goldberg* for Arif Hussain.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

---

[1] Commonwealth *vs.* Arif Hussain.

GREANEY, C.J. These are appeals by Alan Lefkowitz and Arif Hussain, two of the three defendants whose convictions of unaggravated rape were affirmed by the Supreme Judicial Court in *Commonwealth* v. *Sherry,* 386 Mass. 682 (1982).[2] The appeals are from the denials of their respective motions for a new trial pursuant to Mass.R.Crim.P. 30, 378 Mass. 900 (1979). In the motions, the defendants argue that their convictions should be set aside because the trial judge violated: (1) their Sixth Amendment rights by excluding evidence (offered to impeach the victim's testimony by showing bias and unreliability) that she had recounted prior rape experiences; and (2) their rights to due process by failing to instruct the jury properly on the mental element of the crime of rape. The Superior Court judge who presided at the defendant's trial considered the materials submitted by the defendants' counsel[3] and heard oral argument on the motions. He denied the motions, concluding, in substance, that the questions sought to be raised by the defendants had been raised and considered by the Supreme Judicial Court in its opinion in *Commonwealth* v. *Sherry, supra.*[4] We affirm his orders.

1. The defendants' Sixth Amendment claims concern the trial judge's exclusion from evidence of certain hearsay statements by the victim concerning her prior sexual experiences. According to the defendants' offers of proof, the victim had disclosed to others that she had been raped or almost raped on several occasions in the past. The defendants argue that the

---

[2] Eugene Sherry, the third defendant in the case, is not involved in these appeals.

[3] The defendant Lefkowitz is represented by new counsel on this appeal. The defendant Hussain is represented by his trial counsel.

[4] Prior to filing these motions under Mass.R.Crim.P. 30, the defendants filed petitions for habeas corpus in the United States District Court for the District of Massachusetts. The petitions sought relief on the same grounds set forth in the motions in the Superior Court. A judge of the United States District Court considered the claims, concluding that the defendants had exhausted their State remedies with respect to the Sixth Amendment claims but had not exhausted their State remedies with respect to the due process claims. Accordingly, the judge denied the petitions without prejudice until State remedies should be pursued and exhausted on the due process claims.

statements would have impeached the credibility of the victim's testimony by illustrating that she had a distorted and exaggerated perception of nonconsensual sexual activity. Thus, the defendants urge, the exclusion of the evidence prevented them from presenting to the jury a basis for finding the victim's testimony biased and unreliable. See *Davis* v. *Alaska,* 415 U.S. 308, 315-318 (1974); *Commonwealth* v. *Joyce,* 382 Mass. 222, 225-229 (1981).

We agree with the trial judge that the defendants are precluded from raising the question. An examination of the record and briefs in the direct appeal before the Supreme Judicial Court discloses that the defendants made several arguments alleging error in the exclusion of the victim's statements concerning her past sexual experiences. These arguments included the argument that a failure to permit such inquiry as would tend to show the victim's bias and motive to lie violated their Sixth Amendment rights.[5] The Supreme Judicial Court discussed and rejected the contentions at 386 Mass. at 691-693. Simply because the issue was not addressed in the *Sherry* opinion in the exact form in which it was presented does not mean that the Supreme Judicial Court was not given a fair opportunity to apply controlling legal principles to the facts bearing upon the defendants' constitutional claim. See *Smith* v. *Digmon,* 434 U.S. 332 (1978); *Williams* v. *Holbrook,* 691 F.2d 3, 8 (1st Cir. 1982).

In this regard, the defendants lose sight of the passage in *Commonwealth* v. *Sherry,* which states (at 692) that "[w]ithout evidence of falsity, the [victim's] statements become irrelevant to any issue in the case, including the credibility of the complainant." See also *Commonwealth* v. *Bohannon,* 376 Mass. 90, 95 (1978); *Commonwealth* v. *Haywood,* 377 Mass. 755, 763 (1979). As the trial judge noted, the defendants presented

---

[5] The contention was most clearly made in Hussain's brief on direct appeal, which framed the argument in terms of the relevance of the evidence to establish bias and motive to lie on the part of the victim. Hussain argued that he needed the evidence to insure a fair trial, citing *Smith* v. *Illinois,* 390 U.S. 129 (1968), and that his constitutional right to the evidence overcame any barrier in G. L. c. 233, § 21B, the so-called rape-shield statute.

"not a scintilla of evidence" showing that the statements were anything but true accounts of past events. Rather, the defendants engaged in speculation that the statements demonstrated the victim's "idiosyncratic and distorted perceptions." Conjecture about "distorted perceptions" cannot substitute for some evidence which would warrant the jury in finding the statements inaccurate.[6] See *Commonwealth* v. *Chretien,* 383 Mass. 123, 138 (1981). Taken in context, the Supreme Judicial Court's indication that, without proof of falsity, the statements were "irrelevant to any issue in the case including the credibility of the complainant" can only be viewed as a rejection of the defendants' Sixth Amendment argument. It is not our function to reconsider the issue.[7]

2. The defendants' due process argument was not raised in their direct appeals.[8] The argument involves the instructions given the jury on the elements of the crime of unaggravated

---

[6] Despite the defendants' arguments, we find nothing in *Commonwealth* v. *Joyce,* 382 Mass. 222, 230 (1981), to the contrary. In the *Joyce* case, the alleged prior acts of prostitution by the victim resulting in her arrest established a potential motive for the victim falsely to allege rape in order to avoid another arrest for prostitution. Here, in contrast, the defendants presented no persuasive explanation why prior non-consensual encounters by the victim might indicate bias or furnish a motive to lie. The victim's statements, unless shown to be false, had no "rational tendency to prove an issue in the case." *Ibid.,* quoting from *Commonwealth* v. *LaCorte,* 373 Mass. 700, 702 (1977).

[7] That the Supreme Judicial Court considered and dealt with the issue is further supported by that court's denial of the defendants' joint petition for rehearing under Mass.R.A.P. 27, 365 Mass. 874 (1974). Point II of the petition for rehearing challenged the correctness of the *Sherry* opinion on the basis that the exclusion of the evidence violated the defendants' constitutional right to present a full defense, citing as authority *Chambers* v. *Mississippi,* 410 U.S. 284 (1973).

[8] We disagree with the trial judge that the question now argued concerning the jury instruction was raised and dealt with in the direct appeals. We agree with the United States District Court judge who acted on the petition for habeas corpus that "[o]ne cannot reasonably interpret any part of [the] discussion [in *Commonwealth* v. *Sherry,* at 696-697] as responding to the [defendants'] due process argument . . . or as implicitly holding that this constitutional argument is so frivolous that no response [is] required."

rape and focuses on the trial judge's failure to give the italicized portion of the following jury instruction:[9]

"Unless you find beyond a reasonable doubt that [the victim] clearly expressed her lack of consent, or was so overcome by force, or threats of bodily injury that she was incapable of consenting, *and unless you find beyond doubt that the accused had actual knowledge of [the victim's] lack of consent, then you must find them not guilty.*"

The trial judge refused to give the requested instruction, stating that the jury "should look at the acts of the defendants, [the victim's] response to [those] acts, whatever words were used, examining the entire atmosphere, and not look at [the case] from the point of view of the defendant's perceptions . . . I don't think that's the law." The instructions given the jury on the elements of unaggravated rape are set forth in the appendix to this opinion.

The defendants argue that the instructions omitted not only their requested instruction on intent but also any instruction on the mental element of the crime of rape, thereby inviting the jury to convict them without a finding that they possessed a culpable state of mind. A conviction on this basis, the defendants contend, violates due process because mental culpability is required as an element of all crimes which have their origin in the common law. See, in general, *Morissette* v. *United States,* 342 U.S. 246, 260 (1952); *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 436 (1978); *Commonwealth* v. *Mixer,* 207 Mass. 141, 142 (1910).[10]

---

[9] The instruction was seasonably requested by the defendants in writing pursuant to Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979), and a proper objection was taken to the trial judge's refusal to give the instruction.

[10] We have in mind the usual rule that a defendant cannot reserve for a motion for new trial matters that were raised at the original trial but not argued on the appeal. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 449 (1980). The trial judge, however, has discretion to consider whether a new trial should be granted on a ground which had not been raised before him previously. See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973); *Commonwealth* v. *Harrington, supra.* It is unclear here whether the

The trial judge did not err in denying the instruction in the language requested, since the instruction expressly sought to make specific intent an essential element of the crime of rape. As the Supreme Judicial Court made clear in *Commonwealth* v. *Grant,* 391 Mass. 645, 649 (1984), the crime of rape, G. L. c. 265, § 22, does not require for conviction proof that the defendant harbored a "specific intent that the intercourse be without consent." Indeed, to emphasize the point that specific intent is not an essential element of the offense, the *Grant* decision made reference (at 650) to the language in *Commonwealth* v. *Sherry, supra* (386 Mass. at 687) that "[t]he essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury."[11]

The passage quoted from *Sherry* merely repeats what has long been the view in this Commonwealth of the gravamen of rape. See *Commonwealth* v. *McDonald,* 110 Mass. 405, 405-406 (1872); *Commonwealth* v. *McCan,* 277 Mass. 199, 203 (1931); *Commonwealth* v. *Deschamps,* 1 Mass. App. Ct. 1, 3 (1972); *Commonwealth* v. *Leroux,* 12 Mass. App. Ct. 886

---

trial judge exercised his discretion to consider the due process claims. It appears that he did, at least to the extent that he concluded that the claims had been passed upon by the Supreme Judicial Court. In any event, we think, in view of the proceedings in the United States District Court, that judicial economy will be served by considering the defendant's due process claims.

[11] The defendants have attempted to distinguish the *Grant* case on the basis that the rape committed in that case was aggravated. The discussion in *Grant* of the elements of rape leaves no doubt of the court's holding: it is not necessary in this Commonwealth to prove specific intent in order to convict a defendant of rape, whether aggravated or unaggravated. We note that *Grant* had not been decided when the defendants' petitions for habeas corpus were considered in the United States District Court.

The defendants rely on the discussion in *Commonwealth* v. *Therrien,* 383 Mass. 529, 538-539 (1981), and argue that that decision determines that there is an element of specific intent in rape. That case, however, is distinguishable on its facts, involving as it did a victim who appeared to consent to the defendant's actions because of threats made by a third party, rather than threats made by the defendant. The state of mind of the defendant was relevant only to prove that an essential element of the crime was present — that is that there had been in fact no real consent. Since the defendant was aware of the threats, the victim's words expressing consent could be ignored by the jury and they could find that a rape had occurred.

(1981). The discussion in the *Grant* case, and the frequency
with which the crime of rape has been described in the deci-
sional law of this Commonwealth, lead to the inescapable
conclusion that the prosecution has proved rape if the jury
concludes that the intercourse was in fact nonconsensual (that
is, effectuated by force or by threat of bodily injury), without
any special emphasis on the defendant's state of mind. See
*Commonwealth* v. *Thayer, ante* 234, 238 (1985). The scienter
element of the offense thus equates with the scienter sufficient
to convict of most crimes, a general intent. That element usually
is not explained to the jury in the enumeration of the elements
of the crime, being left to be inferred from all the evidence in
the case.[12] (See the language in the *Grant* decision 391 Mass.
at 651, which speaks in terms of "the defendant intend[ing]
intercourse" as sufficient intent.) Commentators on criminal
law are in accord,[13] as are the courts of several other States
that have considered the question.[14] In so defining the crime,
the Legislature acted well within its authority,[15] seeking, per-

---

[12] Thus, a finding by a jury based upon the behavior of the defendant and
the victim in a rape case that the sexual encounter was against the will, or
without the consent of, the victim of necessity implies a finding of general
intent without a separate instruction on that issue. See discussion in Deavitt
& Blackmer, Federal Jury Practice and Instructions § 14.03, Supp. at 232-
241 (1985). See also *Commonwealth* v. *Correia,* 381 Mass. 65, 82-83
(1980). So formulated, the crime is "based on the premise that one person
cannot accidentally or innocently induce another person to engage in sexual
intercourse by means of [force or] a threat." *State* v. *Saucier,* 421 A.2d
57, 59 (Me. 1980).

[13] See LaFave & Scott, Criminal Law § 28, at 196 and 202 (1972);
Perkins, Criminal Law 152-168 and 764 (2d ed. 1969).

[14] See *State* v. *Cantrell,* 234 Kan. 426, 434 (1983), cert. denied, 469
U.S. 817 (1984); *State* v. *Saucier,* 421 A.2d 57, 58-59 (Me. 1981); *People*
v. *Hammack,* 63 Mich. App. 87, 91 (1975); *Brown* v. *State,* 59 Wis. 2d
200, 213-214 (1973).

[15] General Laws c. 265, § 22, contains no language such as "wilfully,"
"knowingly" or "with intent to," which would require proof of a special
state of mind on the defendant's part to obtain a conviction. Contrast G. L.
c. 265, § 24, as appearing in St. 1980, c. 459, § 7, which punishes an
assault "with intent to commit a rape." The defendants' reliance on *Moris-
sette* v. *United States,* 342 U.S. 246, 262-263 (1952), *United States* v.
*United States Gypsum Co.,* 438 U.S. 422, 436-437 (1978), and *Common-*

haps, to deter would-be rapists by putting them at risk of conviction if a jury concludes, despite a claim of consent, that sexual intercourse was induced by force or threats.

The instructions given by the trial judge in this case met (and may have exceeded) the specifications discussed above. The instructions suggested that the defendants could be convicted only if the prosecution proved that they had a "purpose" or had "calculated" to have intercourse by means of force or threats not merely a "purpose" or "calculat[ion]" to have intercourse. Appendix, paragraphs 11, 14, and 19. The instructions made express reference to the need for a finding by the jury that any "fear instilled by threats . . . be reasonable in the circumstances," thereby directing the jury's attention to the existence of objective facts, as distinguished from the victim's subjective impressions. Appendix, paragraphs 17 and 19. The jury were also directed to examine the "act[s] and conduct" of the defendants to decide whether the intercourse was accomplished by force or threats. Appendix, paragraphs 16 and 17. This is traditional language for ascertaining the existence of intent from inferences drawn from behavior. Finally, the legal standards for determining whether consent was present were stated in detail in recognized language. Appendix, paragraphs 20, 21, and 22. Since the instructions in paragraphs 11, 14 and 19, in particular, focused the jury's attention on the defendants' perceptions perhaps to an extent greater than was required, the charge may have benefited the defendants by leading the jury to believe that the prosecution was required to show that they had acted with specific intent.[16]  See *State* v.

---

*wealth* v. *Mixer,* 207 Mass. 141, 142 (1910), is misplaced. These decisions hypothesize, as a general rule, that some scienter requirement is an element of crimes which derive from the common law without distinguishing between general and specific intent.

[16] This is not to say that a defendant's perceptions as to consent are never of importance. In *Commonwealth* v. *Grant,* 391 Mass. at 651, and in *Commonwealth* v. *Sherry,* 386 Mass. at 697, the Supreme Judicial Court left open the possibility that, in appropriate circumstances, a reasonable good faith mistake in assuming consent might be a defense to a charge of rape. This view is in keeping with the principle that criminal intent (whether general or specific) may be negated by various factors such as duress, in-

*Pierce,* 438 A.2d 247, 251-252 (Me. 1981); *People* v. *Mattas,* 645 P.2d 254, 257 n.3 (Colo. 1982). In any event, the trial judge's complete instructions did not omit reference to any essential element of the crime.

Since the impeachment issue was presented to the Supreme Judicial Court in the defendants' direct appeals and rejected, and since the jury instructions on the elements of unaggravated rape were not violative of due process, the orders denying the defendants' motions for new trial are affirmed.

*So ordered.*

BROWN, J. (concurring). I am in full agreement with the reasoning of the panel. It is time to put to rest the societal myth that when a man is about to engage in sexual intercourse with a "nice" woman "a little force is always necessary." That notion has not been insinuated into our jurisprudence.

The essence of the offense of rape is lack of consent on the part of the victim. I am prepared to say that when a woman says "no" to someone any implication other than a manifestation of nonconsent that might arise in that person's psyche is legally irrelevant, and thus no defense. Any further action is unwarranted and the person proceeds at his peril. In effect, he assumes the risk. In 1985, I find no social utility in establishing a rule defining nonconsensual intercourse on the basis of the subjective (and quite likely wishful) view of the more aggressive player in the sexual encounter.[1] See and compare *Common-*

---

voluntary intoxication, insanity, or a legitimate mistake of fact. See generally Perkins, Criminal Law cc. 9 & 10 (2d ed. 1969); LaFave & Scott, Criminal Law cc. 4 & 5 (1972); Nolan, Criminal Law c. 32 (1976). The opportunity to present the defense of reasonable good faith mistake was available to the defendants here, but they did not take advantage of it. See *Commonwealth* v. *Sherry,* 386 Mass. at 697.

[1] "'No' must be understood to mean precisely that. Old cultural patterns — no matter how entrenched — must adapt to developing concepts of equality . . . . Surely [we] . . . should understand that sexist stereotypes of 'no' meaning 'yes' can't justify aggression against women." Dershowitz, New Rape Laws Needed, Boston Herald American, June 24, 1985, at 19, col. 1.

*wealth* v. *Thayer, ante* 234, 238 (1985) (defendant's expectations are irrelevant if complainant did not consent).

APPENDIX TO THE OPINION OF THE COURT.

The paragraph numbers have been inserted for reference in the course of our discussion of the instructions.

"[1.] I will, at this point, call your attention to the offense of rape. Although this is a crime of ancient origin, it is now embodied in a statute: General Laws Chapter 265, Section 22, as amended significantly in 1974.

"[2.] As I read the pertinent parts of this statute I am first going to call your attention to this offense without aggravated features. I will later come to that.

"[3.] As to the crime of offensive rape without aggravation, the pertinent parts of the statute are these.

> " 'Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will' — in this case, her will —
> " ' — or compels such person to submit by threat of bodily injury shall be punished.'

"[4.] Do you mind if I repeat that?

> " 'Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will or compels such person to submit by threat of bodily injury shall be punished."

"[5.] Now I have, for the sake of convenience in explaining the legal precepts, broken this crime — this offense down into three real components.

"[6.] In order to find any of the defendants guilty of the crime of rape, without aggravation, the following legal components must be proved to you beyond a reasonable doubt. One, that the defendant or defendants had sexual intercourse with the alleged victim.

"[7.] Two, that such intercourse was accomplished by force or by threat of bodily injury, to the extent that it was against the will or without the consent of the complainant.

"[8.] Let me repeat: You must be convinced beyond a reasonable doubt that the defendants had sexual intercourse with the victim. Two, that such intercourse was accomplished by force or by threat of bodily injury and therefore was against the will, or without the consent of the complainant.

"[9.] Intercourse means that the man's sexual organ penetrated the female's sexual organ.

"[10.] Now, the first part of component 2 is that sexual intercourse was accomplished by force and what does force mean in legal contemplation?

"[11.] It's been said that force in this context means that it must be such to overcome the woman's will; that it be sufficient to accomplish the man's purpose of having sexual intercourse against her will.

"[12.] There is no definitive rule as to the amount of force which is required. You will note, however, that the second part of component 2 provides, and I will read it again: component 2 is that such intercourse was accomplished by force or by threat of bodily injury.

"[13.] So if either one of those exist and you are convinced that they exist on the evidence beyond a reasonable doubt, then that component is satisfied.

"[14.] Now, note that the second part of component 2 provides, in addition to the exertion of actual force in compelling submission of the female to sexual intercourse, this offense can be committed if bodily injury is threatened for the purpose of extorting consent or preventing resistance and if the threats create a reasonable apprehension in the female of dangerous consequences or bodily harm, or if the threats overpower the mind of the victim to the extent that she does not resist, this component is satisfied.

"[15.] Now, you have got to be convinced of that component beyond a reasonable doubt of either one of those things. That is that actual force was used or that there was threat of bodily harm. This, of course, must be within the credible evidence that was presented in this courtroom.

"[16.] Now, this threat of bodily harm may be inferred from the conduct of the defendants. It may be expressed by act or conduct as well as words, you understand that.

"[17.] Of course the fear instilled by the threats, if you find such threats, must be reasonable in the circumstances delineated by the credible evidence. In other words, you look at the narrative, and the narrative of the defense which you have adopted and together with the ride in the car and what happened in the cottage or summer house at Rockport, and you apply these concepts to them. So that if you find the threat of bodily harm, either express or implied, you must then consider: was that threat of bodily harm expressed by conduct or words, and was fear instilled in the alleged victim so that it was reasonable for her not to resist? Was her will to resist overcome by the express or implied conduct of the defendants in threatening bodily harm?

"[18.] Now, you may find that beyond reasonable doubt, or you may not find it at all, since you are the fact finders.

"[19.] Now, you must be convinced beyond a reasonable doubt on the evidence presented, the acts of the defendants, and the threats, if any, of the defendants, but whatever the defendants did or said, were reasonably calculated to create in the mind of the victim a real apprehension due to fear of imminent bodily harm, serious enough to impair or overcome her will to resist.

"[20.] The next component of course is — the way I have given it to you — is that this must be, and must operate against the will of the victim.

"[21.] Now, against the will, and without her consent, are synonymous terms. Now, in determining whether or not there was no consent, I read to you pertinent parts of a Massachusetts case.

"[22.] 'The act of the defendant must have been against the will, that is without the woman's consent, and there must have been sufficient force used by him to accomplish his purpose.'

"[23.] 'The jury must be satisfied that there was no consent during any part of the act, and that the degree of resistance was frequently an essential matter for them to consider in determining whether the alleged want of consent was honest and real. But there is no rule of law requiring a jury to be satisfied that the woman, according to the measure of her strength, used all the physical force in opposition of which she was capable.'

"[24.] So what that says, put succinctly is that you may consider the resistance which has been delineated in the facts, as to — you may consider that as to whether or not she consented to these acts.

"[25.] Now, if you find that these men, these defendants, had sexual intercourse with the alleged victim, or any of them, and that this intercourse was compelled by force exerted by them or any one of them or she was compelled to submit to the intercourse by threat of bodily injury, and you are convinced of these elements beyond a reasonable doubt, you must find the defendants, or any one of them guilty.

"[26.] If you are not so convinced you must acquit these defendants."