COMMONWEALTH *vs.* CHRISTIAN DELP.

No. 93-P-1600.

Essex. April 8, 1996. - October 8, 1996.

Present: DREBEN, GILLERMAN, & GREENBERG, JJ.

*Jury and Jurors. Practice, Criminal,* Deliberation of jury, Assistance of counsel, Disclosure of evidence. *Evidence,* Bias, Relating to deliberation by jurors, Exculpatory.

Discussion of recent cases involving postverdict testimony of jurors. [437-439]

In a criminal case, the judge did not improperly preclude defense counsel from questioning a juror, in a postverdict proceeding on a motion for new trial, with respect to remarks made by other jurors that showed bias against the defendant because of his sexual orientation. [439]

In a criminal case, the judge correctly denied the defendant's motion for a new trial after determining that there was no juror bias amounting to an improper extraneous influence on jury deliberations. [439-440]

In a rape case in which the defendant asserted on appeal that trial counsel was ineffective in failing to develop certain evidence contained in medical and other records of the victim and in which it could not be ascertained which records counsel had at trial, the court stated that, if the defendant chose to file a renewed motion for a new trial on this basis, the relevant records should be considered as having been before counsel or as newly discovered, and dealt with accordingly. [440-441]

On appeal from convictions for rape of a child, the defendant did not demonstrate that trial counsel was ineffective by reason of counsel's decision not to request a limiting instruction with respect to certain admissible but inflammatory evidence, or counsel's alleged failure to object to properly admitted fresh complaint testimony, or counsel's failure to object to the judge's adequate fresh complaint instructions. [441-442]

There was no merit to a criminal defendant's claim that the prosecutor failed to disclose exculpatory evidence, which was, in any event, in the possession of another government agency. [442]

INDICTMENTS found and returned in the Superior Court Department on September 25, 1990.

The cases were tried before *John T. Ronan*, J., and a motion for a new trial was heard by him.

*John G. Swomley* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Convicted of three counts of rape of a child (age fifteen) and one count of contributing to the delinquency of a minor, the defendant claims ineffective assistance of counsel and that the Commonwealth failed to provide him with material exculpatory evidence. His major contention, however, is based on receipt of postverdict evidence from a juror who claims to have been biased on account of the defendant's homosexuality. We affirm the convictions and the denial of the motion for a new trial. Our recitation of the facts will be limited to those relevant to the issues on appeal.

1. *Claim of juror bias.* On the Monday following the verdicts reached the preceding Friday, a member of the jury that had convicted the defendant returned to court and informed a court officer that he had some afterthoughts or doubts about the verdicts reached by the jury. The trial judge held a lobby conference on Wednesday with the juror and told him that if he had a matter of conscience that he thought ought to be told, he should put it in a notarized affidavit. The juror did so and in a subsequent letter[1] stated that "my verdict was bias at the conclusion of Christian Delp's trial." He explained that he was having difficulty determining which side was lying since there were no eyewitnesses to the rapes.

> "I was taken aback by Christians dialect. That when I heard it, I considered Christian a Homosexual. And from that point, accepted Commonwealths testimony as Gospel, while on the other hand, found defense testimony, no matter how helpful to Christians case, unsubstantial. And that my verdict was based on Christians Homosexuality."[2]

After defense counsel requested a new trial, relying on *Commonwealth* v. *Laguer*, 410 Mass. 89 (1991), the judge held a hearing and heard oral testimony from the juror.

---

[1] The affidavit was lost, but the juror filed a letter which he sent to defense counsel and the prosecutor. The statements in the text are from the letter without editorial changes.

[2] He also wrote that if and when his affidavit was recovered, counsel would see that he also believed that the defendant's dialect affected the other jurors in the same way.

The juror testified that until Christian took the stand, he thought he was not guilty, and as stated in his affidavit, he "had felt that I, myself, had found Christian Delp guilty solely on his apparent homosexuality." His weighing of the testimony was influenced by the fact that he believed that Delp was a homosexual and by "the prompting of other jurors." When the juror was questioned about other jurors, the prosecution objected, but after defense counsel cited *Commonwealth* v. *Laguer*, 410 Mass. 89, the judge said he would allow the interrogation. The juror, however, was not questioned further about other jurors, and said that he did not want to implicate any other juror. He added, "I think that if I had had my senses with me at the time that I would have rebuffed their remarks about Christian's homosexual; but homosexuality, I think, affects different people in different ways. . . ."

The judge asked the juror: "Would you say that when you left here you were satisfied with the jury verdict, even personally, but that over the weekend that you thought about it and then thought that perhaps you had, yourself, second thoughts about it? Is that a fair statement?" The juror answered, "I would say that's pretty accurate, yes." In reply to questioning by the prosecutor, the juror testified that he tried not to be biased, that he did not hate any particular group, that at the time he left the courtroom he believed he had done his duty, and that he had listened to the evidence throughout the case. The judge took the matter under advisement and a month later, without any findings, denied the motion for a new trial.

Before turning to the defendant's arguments, a brief discussion of recent Massachusetts cases involving juror postconviction testimony may be in order. The seminal case, of course, is *Commonwealth* v. *Fidler*, 377 Mass. 192, 196 (1979), in which the Supreme Judicial Court, citing *Woodward* v. *Leavitt*, 107 Mass. 453, 460 (1871), explained that it still adhered "to our rule which requires courts to protect jurors and their verdicts from unwarranted intrusions and which emphasizes the importance of the finality of jury verdicts." *Fidler* limited the admissibility of juror testimony to the existence of "extraneous 'disturbing' influences." *Id*. at 197. Pointing out that these influences often can be objectively ascertained and frequently be corroborated, the court concluded that " 'where overt factors are present by which

the verdict's validity can be objectively assessed, the law's commitment to a just result warrants receiving evidence as to the alleged acts of misconduct. But where the juror would testify solely to matters resting in his own consciousness, the dubious value of the testimony is outweighed by the need for stability in verdicts' and the testimony should be excluded." *Id.* at 198, quoting from 3 J. Weinstein & M. Berger, Evidence par. 606[03], at 606-25 (1978). See also rule 606(b) of the Proposed Massachusetts Rules of Evidence, set forth in the margin,[3] which "is in accord" with current Massachusetts law. *Commonwealth* v. *Tavares,* 385 Mass. 140, 155-156 n.25, cert. denied, 457 U.S. 1137 (1982). The *Fidler* court recognized that the line between overt factors and matters resting in a juror's consciousness is not easily drawn and that difficult cases would arise. 377 Mass. at 198.

While bias of a juror is not, "strictly speaking," an extraneous matter, *Commonwealth* v. *Grant,* 391 Mass. 645, 653 (1984), and while "the current Massachusetts rule . . . exclud[es] evidence of mental processes," evidence of remarks by jurors in the jury room showing bias are admissible, at least where there is a substantial likelihood of prejudice to the defendant. See *Commonwealth* v. *Tavares,* 385 Mass. at 155-156 n.25. In that case, the defendant claimed that a female juror "had called a black witness 'Sapphire,' a patently racist term." *Id.* at 153. The court assumed, the Commonwealth not having argued that evidence of racial bias relates to the jurors' mental processes, that the judge acted properly when he asked each juror whether he had heard the comments.[4] *Id.* at 156. See also *Commonwealth* v. *Grant,* 391 Mass. at 653,

---

[3]Rule 606(b) of the Proposed Massachusetts Rules of Evidence, which is the same as the Federal rule, provides: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

[4]The trial judge's finding that the term had been used in a jocular manner without any racial prejudice which would affect the verdict was upheld by the Supreme Judicial Court.

where the court upheld the trial judge's implicit finding that a juror was not biased. If any doubt remained as to the admissibility of such evidence, *Commonwealth* v. *Laguer*, 410 Mass. at 97, established that remarks of jurors in the jury room indicating ethnic prejudice which suggest that the defendant "did not receive a trial by an impartial jury, . . . cannot be ignored," and a hearing must be held.[5]

Although the defendant argues that the judge improperly refused to allow counsel to explore whether "homosexual bias resonated around the jury room during deliberations," the transcript, as indicated above, demonstrates that the judge did not preclude questioning as to remarks made by other jurors. While the juror may have sensed a reluctance by the judge to discuss the thought processes of other jurors, counsel, who was aware of and had expressly cited *Laguer*, did not pursue that line of questioning after being allowed to do so.[6]

The more difficult question is the juror's claim that he was biased. Here, the matter does not relate to overt factors or communications to the jury, but rather concerns the juror's uncorroborated posttrial testimony claiming his own previously undisclosed bias. Whether such testimony may properly be considered on a motion for a new trial is doubtful, at least in the absence of extreme prejudice. As stated in *Mattox* v. *United States*, 146 U.S. 140, 148 (1892), "[p]ublic policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve." In *Commonwealth* v. *Hunt*, 392 Mass. 28, 41 n.17 (1984), while finding it unnecessary to decide whether a juror's uncorroborated posttrial testimony concerning his uncommunicated preverdict knowledge may be considered on a motion for a new trial, the Supreme Judicial Court was "of the opinion . . . that permitting jurors to 'remain silent during deliberations and later assert that they

---

[5]After such a hearing, the trial judge in the *Laguer* case ultimately concluded the jury had not been exposed to extraneous influences. See *Commonwealth* v. *Laguer*, 36 Mass. App. Ct. 310 (1994).

[6]This may have been a tactical decision. At the hearing with counsel on the motion for a new trial which preceded the evidentiary hearing, the prosecutor stated he had asked the juror if he recalled any remarks made during the deliberation of a derogatory nature and he had not remembered any.

were influenced by improper considerations,' [*United States* v. *Eagle,* 539 F.2d 1166, 1170 (8th Cir. 1976), cert. denied, 429 U.S. 1110 (1977)] 'would add unduly to the already fragile state of criminal convictions.' *United States ex rel. Owen* v. *McMann,* 435 F.2d 813, 817 (2d Cir. 1970), cert denied, 402 U.S. 906 (1971)." See also *Carson* v. *Polley,* 689 F.2d. 562, 580-581 (5th Cir. 1982); *Brofford* v. *Marshall,* 751 F.2d. 845, 853-854 (6th Cir.), cert. denied, 474 U.S. 872 (1985).

The Commonwealth did not object here to the admissibility of the evidence. Moreover, an assumption that the evidence was admissible would not lead to a new trial. See *Commonwealth* v. *Mahoney,* 406 Mass. 843, 855 (1990). Compare *Commonwealth* v. *Cuffie,* 414 Mass. 632, 638 (1993). The judge's colloquy with the juror leaves us no doubt that he viewed the juror's assertion of bias as an example of the oft expressed second thoughts of a conscientious juror, see, e.g., *United States* v. *Gerardi,* 586 F.2d. 896, 898 (1st Cir. 1978); *United States* v. *Weiner,* 578 F.2d 757, 764 (9th Cir.), cert. denied, 439 U.S. 981 (1978), which do not in any way necessitate a new trial. Although he made no findings, the judge's conclusion, after questioning the juror, "clearly implies his finding that the juror was not biased." *Commonwealth* v. *Grant,* 391 Mass. at 653. See *Commonwealth* v. *Dunnington,* 390 Mass. 472, 478-479 (1983). Since nothing in the record leaves us "with a firm conviction that a mistake has been committed," the judge's denial of the motion is affirmed. *Commonwealth* v. *Tavares,* 385 Mass. at 156. *Commonwealth* v. *Dunnington,* 390 Mass. at 479.

2. *Ineffective assistance of counsel.* The primary claim of ineffectiveness is that trial counsel did not develop certain evidence contained in a hospital report, in a school report and perhaps in other records, to the effect that the victim suffered from "impaired reality testing." The trial was held shortly after the decision in *Commonwealth* v. *Stockhammer,* 409 Mass. 867 (1991), and, as a result of that decision, the defendant's counsel was given massive amounts of material to consider, including, perhaps, copies of some records stating that the victim had "impaired reality testing."

After the conclusion of the trial, the material given to counsel was either lost or destroyed, perhaps even twice, and the defendant and the Commonwealth have been unable to

agree as to what material was seen by trial counsel.[7] A Superior Court judge, based on docket entries, but before a transcript was available, thought that certain documents were not part of the materials. The validity of that ruling is not clear. The defendant at one point, through new counsel, who also represents him on this appeal, made a motion for a new trial on the basis of newly discovered evidence, but was not sure that the evidence was, indeed, newly discovered. The motion was denied without prejudice.

In view of the destruction of the copies of the records and the extreme difficulty of ascertaining which records were before counsel (the trial judge has retired, and it appears that trial counsel is deceased), it would seem fruitless to seek at this time a determination of exactly which records were in the hands of trial counsel. Accordingly, on a renewed motion for a new trial, if the defendant chooses to file such a motion, the records should be considered as either having been before counsel or as newly discovered. The question for decision should be whether the defendant can show through expert testimony that the records containing the term "impaired reality testing" or words of similar import would cast such doubt on the victim's ability "to perceive, recollect, and recall the incident[s] in question," see *Commonwealth* v. *Baxter*, 36 Mass. App. Ct. 45, 48-49 (1994); *Commonwealth* v. *Syrafos*, 38 Mass. App. Ct. 211, 216 (1995), so as to tend to create a reasonable doubt that might not otherwise exist. See *Commonwealth* v. *Fuller*, 423 Mass. 216, 223, 226 (1996). In such event, a new trial would be in order.[8]

The remaining claims of ineffective assistance of counsel do not involve factual matters outside the trial record and hence can be resolved on the defendant's direct appeal. *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344-345 (1994). The contentions are without merit. The evidence that the defendant had molested another young boy two years younger than the victim in the same manner and during the same time period was admissible in the discretion of the judge. See *Commonwealth* v. *King*, 387 Mass. 464, 470-472 (1982);

---

[7]Copies of many records were obtained by appellate counsel, but the prosecutor and counsel differ as to which were given to trial counsel.

[8]For this reason it is unnecessary for us to pass on the prosecution's motion to strike which is based on its determination that the records were not available to counsel. That issue is now irrelevant.

*Commonwealth* v. *Clements,* 36 Mass. App. Ct. 205, 213-214 (1994). Counsel's decision not to request a limiting instruction may have been a tactical move not to highlight the evidence.

As to the argument that defense counsel failed to object that "fresh" complaint testimony by the victim, made four to six months after the last alleged incident, was stale, counsel did indeed object to such testimony from one witness. After the judge ruled that staleness was a question for the jury, counsel was not ineffective in assuming the same ruling would apply to the second fresh complaint witness to whom the victim spoke at a comparable time. Moreover, the complaints "were well within the boundaries of 'freshness'" in light of the victim's age, *Commonwealth* v. *Bishop,* 416 Mass. 169, 187-188 (1993); counsel was not required to pursue an argument with little chance of success.

Although the judge's "fresh complaint" instructions were not as clear as they might have been, they adequately conveyed to the jury that it was for them to decide whether the complaints were fresh and that such evidence could only be used as corroborating evidence.

3. *Disclosure of exculpatory evidence.* The defendant faults the Commonwealth for failing to turn over evidence to the defendant that the victim suffered from "impaired reality testing." The records showing this diagnosis presumably were held by the Department of Social Services. "A prosecutor's duty . . . extends only to exculpatory evidence in the prosecutor's possession or in the possession of the police who participated in the investigation and presentation of the case," *Commonwealth* v. *Tucceri,* 412 Mass. 401, 407 (1992), and does not extend to evidence held by other government agencies. *Commonwealth* v. *Daye,* 411 Mass. 719, 734 (1993). No special factors exist here to extend that obligation.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*